## Henario Roma v. The State.

### No. 4566.    Decided February 17, 1909.

**1.—Manslaughter—Continuance—Second Application.**

In the absence of a statement to the contrary, a motion for continuance will be considered as a second application, and refused where other witnesses testified to the same facts set out in the application, besides the testimony was not probably true.

**2.—Same—Evidence—Threats.**

Where upon trial for murder the evidence showed that the defendant and another acted together in the commission of the homicide, there was no error in admitting in evidence the threats against the deceased of this other party made in the presence of the defendant.

**3.—Same—Evidence—Res Gestae—Declarations of Third Party.**

Upon trial for murder, there was no error to admit the statement of State's witness that defendant threatened to kill her because she would tell on the defendant, and that this threat was made just after the deceased was killed. This was res gestae.

**4.—Same—Evidence—Res Gestae—Corroboration.**

Upon trial for murder there was no error in admitting testimony with reference to a difficulty between defendant and a third party immediately after the homicide, and which was part and parcel of the same; and also corroborating the testimony of a State's witness with reference to threats made against her by defendant to keep her from testifying; and further showing that the wound on the defendant was not inflicted by the deceased, as the former insisted.

**5.—Same—Charge of Court—Self-Defense.**

Where upon trial for murder the evidence did not raise the issue of self-defense, there was no error in the court's failure to charge thereon.

**6.—Same—Charge of Court—Conspiracy—Manslaughter.**

Where upon trial for murder the evidence showed that the defendant and his codefendant entered into a conspiracy to kill the deceased, the court correctly charged on conspiracy; and the court's charge on manslaughter was not a matter of which defendant could complain.

**7.—Same—Charge of Court—Motion for New Trial.**

Unless the motion for new trial specifically points out some error in the court's charge the same will not be considered on appeal.

**8.—Same—Charge of Court—Limiting Testimony.**

Where the testimony was part of the res gestae of the transaction, and could not be appropriated for any illegal purpose, there was no error in the failure of the court to limit the same.

Appeal from the District Court of Caldwell. Tried below before the Hon. L. W. Moore.

Appeal from a conviction of manslaughter; penalty, four years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*F. J. McCord,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of manslaughter, and his punishment assessed at four years confinement in the penitentiary.

Appellant filed a motion for continuance for want of the testimony of Frank Brothers, but the application for said witness does not show whether the same is the first or second application. Other witnesses swore in substance, to the same facts that appellant set up in his application that he expected to prove by said witness. This being true, we will treat the matter, in the absence of a statement to the contrary, as a second application. In the light of the last mentioned fact there could possibly have been no error in the ruling of the court in overruling the application for continuance. Furthermore, the testimony we do not think was probably true in the light of this record.

Bill No. 2 shows that while the witness Domingo Varra was on the stand as a witness for the State, he was permitted, over appellant's objection, to testify that on the afternoon before the killing, he met Massamino Roma driving a wagon near Niederwald, who called witness to him, and said: "He told me to give him my hand and said that we had been good friends until that day, and said that he was going to kill Frank Cornado, the deceased." The bill is approved with the statement that the testimony of the witness was, that defendant was present when Massamino made the threat above referred to. The record shows that the defendant and Massamino were acting together and committed the homicide in this case. The testimony was admissible.

Bill No. 3 shows that while the witness Aurelia Lopez, wife of the codefendant Massamino, was on the stand as a witness for the State, the court permitted her to testify, over appellant's objection, that after defendant had gotten out of the wagon in which all had been riding, and after the wagon had gone down the road about one hundred yards, the defendant came back to the wagon and said, "He was going to shoot me and to kill me (meaning witness) because I would go to court tomorrow and tell on us." This testimony was objected to because it was not shown by said witness that deceased had then been killed; that said testimony was irrelevant and immaterial, and no part of the res gestae, and was calculated to inflame the minds of the jury, and that testimony of a separate and distinct offense from one on trial is wholly irrelevant, improper and prejudicial to the rights of defendant. The court in his qualification says, that the testimony shows this occurrence was just after

the deceased was killed. We hold that same was part of the res gestae of the transaction and shows the animus of appellant.

Bill No. 4 complains of the following: "Albert Sternberg, witness for the State, testified he could not speak English, and over objection of appellant was permitted to testify about a difficulty that occurred after the killing between defendant and one Frank Brothers, as follows: 'I think I called the negro (Frank Brothers) to come there and see what was the matter with them as he could talk their language. The woman then told us to go to Niederwald, that she wanted to go there to see Mr. Kretzmeyer; and the negro was talking for us; the Mexican did not seem to like this and he told the negro that we were trying to take the woman somewhere. Frank told him that we never wanted to take her off, and the Mexican said to Frank that he must not like him and caught Frank in the collar; Frank pushed him back and he got up and came again, and Frank hit him in the head with a rock, I judge that weighed about four pounds. He hit him in the head and knocked him down, and he stayed there by the side of the road by a tree.'" Appellant objected to this testimony on the ground that it had no connection with the killing of deceased, was a separate offense which happened long after the homicide charged against this defendant, and about four hundred yards down the road from the killing, and defendant moved the court to strike out said testimony and instruct the jury to disregard same. The court says this testimony was allowed to explain a wound on defendant, and to show it was not inflicted at the time deceased was killed. This testimony was admissible, both for the purpose indicated by the court and for the further purpose to corroborate the woman's statement when she swore that she in company with appellant and the codefendant were in a wagon with deceased when the difficulty came up between appellant and deceased, they getting out and fighting each other with rocks. After they desisted fighting with rocks, appellant's codefendant Massamino rushed upon deceased and stabbed him. Then Massamino ran off and appellant took after the wagon as the horse ran away with it in which the woman was sitting. When appellant got near the wagon he remarked to the woman that he was going to kill her to keep her from testifying against him for killing deceased. The woman ran and got or attempted to get in the buggy of Albert Sternberg, he not being able to understand her called upon the negro Frank Brothers to interpret the woman's language, and he testifies as stated above, that the woman begged him to let her get in the buggy and to carry her to Niederwald. At this time appellant protested against it, and so insistent was he, that the negro had to knock him in the head to prevent him from dragging the woman out of the buggy. This is corroborated by the woman's testimony, is part and parcel of

one transaction, at least is res gestae of the homicide, and was clearly admissible.

Appellant insists the court erred in failing to charge on self-defense. The evidence does not suggest this issue, but conclusively shows that at the time deceased was stabbed to death he was doing nothing at all towards either appellant or his codefendant. It is true, a short while prior to the time deceased was stabbed, appellant and deceased had had a fight, he insisting, as intimated above, that the blow in the head was caused by the deceased; and the court admitted the evidence above indicated to disprove this fact; but at the immediate time of the homicide deceased was doing nothing either to appellant or his codefendant.

The proof shows that the defendants formed a conspiracy to kill the deceased, and deliberately planned to carry into execution the conspiracy and did so. It follows the court did not err in charging on conspiracy. Nor was there any error in the court charging on manslaughter. If there was, it would be a matter of which appellant could not complain.

Appellant insists that the court erred in his charge in defining principals. In what way the court erred is not pointed out. This court will not consider a complaint of this character in motion for a new trial, unless the motion specifically points out some error in the charge. However, we have examined the charge on principals, and see nothing amiss.

There was no error in the failure of the court to limit the testimony of the witness Aurelia Lopez, that defendant said he was going to shoot her and kill her; nor the testimony of Albert Sternberg, relative to the difficulty between the defendant and Frank Brothers, that occurred after the homicide. This testimony was part of the res gestae of the transaction and could not be appropriated for any illegal purpose, and it would have been error for the court to have charged upon it.

Finding no error in the record, the judgment is affirmed.

*Affirmed.*