BOGAN WARD v. THE STATE.

No. 991.  Decided October 11, 1911.

Rehearing denied November 8, 1911.

**1.—Assault to Murder—Evidence—Motive—Declarations of Defendant.**

Upon trial of assault to murder, there was no error in admitting as evidence the declarations and acts of the defendant, as well as former quarrels with the prosecutrix, all of which transpired shortly prior to the alleged assault; to show motive.

**2.—Same—Evidence—Tracks—Measurement—Rebuttal.**

Where, upon trial of assault to murder, the defendant claimed an alibi, there was no error in admitting in rebuttal testimony as to the measurement of certain foot prints made by shoes which fitted the size of the shoes, etc., of the defendant.

**3.—Same—Bills of Exception.**

Where, upon appeal from a conviction of assault with intent to murder, ap-

pellant's bills of exception did not show within themselves what the evidence in the case was, so that the Appellate Court could determine therefrom whether there was any error, the same could not be considered; besides, the qualifications by the judge clearly showed that the testimony was admissible.

### 4.—Same—Charge of Court—Person Injured.

Where, upon trial of assault with intent to murder, the court charged that if defendant with malice aforethought, etc., did unlawfully make an assault upon any other person, etc., than the prosecutrix, with intent to kill such other person, and that by accident the defendant inflicted the injury, intended to be inflicted on such other person, upon prosecutrix, he would be guilty in the same manner as if the assault had been originally made upon prosecutrix, there was no error under the facts.

### 5.—Same—Charge of Court—Aggravated Assault.

Where, upon assault with intent to murder, the court charged the jury that if defendant intended to shoot some one else other than his wife, and as a matter of fact shot her, but did not intend to kill her, and simply inflicted serious bodily injury, to find him guilty of aggravated assault, there was no error.

### 6.—Same—Charge of Court—Requested Charge.

Where there was no evidence that the defendant shot at a certain party named in the requested charge, there was no error in refusing same.

### 7.—Same—Practice on Appeal.

When error is assigned on the charge of the court by either a bill of exceptions or motion for a new trial, the specific error relied upon should be pointed out, and it is not sufficient to simply copy the charge complained of and allege that the same was material error calculated to injure the defendant, etc. Following Pollard v. State, 58 Texas Crim. Rep., 299, and other cases; besides, the charge of the court was correct.

Appeal from the District Court of Freestone. Tried below before the Hon. H. B. Daviss.

Appeal from a conviction of assault with intent to murder; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*G. A. Bell* and *R. L. Williford,* for appellant.—Upon question of the charge of the court and exceptions thereto: Tooney v. State, 5 Texas Crim. App., 163; Brown v. State, 16 Texas Crim. App., 197; Spencer v. State, 106 S. W. Rep., 386.

*C. E. Lane,* Assistant Attorney-General, for the State.—On question of admitting testimony of former quarrels: Hall v. State, 31 Texas Crim. Rep., 565.

On question of charge of the court on weight of evidence: Richards v. State, 30 S. W. Rep., 805; Smith v. State, 95 S. W. Rep., 1057.

PRENDERGAST, JUDGE.—The appellant was indicted for an assault with intent to murder his wife, was convicted, and given two years in the penitentiary.

It is unnecessary to give any extended statement of the facts. We merely briefly state them. The shooting is alleged to have occurred on June 18, 1910. The appellant and his wife married about two

years before that time. They were both young negroes. The appellant was very jealous and suspicious of her, and in effect accused her from time to time of intimacy with others. They had been quarreling and fussing almost continuously during their married life, and had separated twice before the shooting, and the indications are were going to separate again on the night of the shooting. The appellant had, shortly before this, carried his gun apparently for the purpose of shooting his wife, and about a month before the shooting he took it with him to church and hid it out near the cemetery, and, after attempting to eavesdrop his wife in her talks with others on this occasion, ran and got his gun and brought it back towards the church. When attention was called to this by some persons, one of the witnesses accosted him to know why he had brought his gun with him to church. He replied, to see if he could "catch his wife;" that she had not been treating him right, and unless she did treat him right he was going to kill her; that she had quit him the last time, and that he had taken her back the last time.

On the day of the night of the shooting the negroes had an emancipation celebration or festival at one of their churches; the appellant and his wife and many others were there. Some of the persons were there of whom the appellant was jealous. The shooting occurred at night. The appellant's wife was engaged in a game with several others, among them some of the persons of whom appellant was jealous, and while she was thus engaged, with her back towards the church, a shot was fired which struck her and seriously injured her. The shot from the same fire of the gun also struck several other persons. Several witnesses saw the flash of the gun, and immediately upon its flash appellant's wife fell and exclaimed, "Bogan (meaning appellant) has shot me." Immediately after the shot, whoever it was fired it, ran from one window from which the shot was fired across the house to another, and jumped out of the window and ran. The evidence clearly shows that whoever did the shooting at once ran across the house and jumped out of the window, and while some of them testified they could not see the party well enough to clearly identify him while in the house, the appellant was clearly identified, after jumping out of the house, by several parties as the party who fired the gun. The testimony is ample, full and clear to show that the appellant was the party who fired the shot from the gun that seriously injured appellant's wife.

Appellant has several bills of exception complaining of the action of the court in admitting certain testimony. We will give one of them in full, which is a fair sample of each of the others. The first one is as follows:

"Be it remembered that upon the trial of the above entitled and numbered cause the State introduced the following testimony, by the witness Will Green, to wit: 'Defendant and his wife had been separated twice. They were fussing, quarreling and fighting, and I would

always stop them, and would not let them fight;' which testimony was objected to by the defendant at the time it was offered, upon the following grounds, to wit: That said testimony was too remote; that it had no connection with the matter under investigation, and that the same could serve no other purpose than to prejudice the minds of the jury against the defendant.

"And the court overruled said objections and admitted said testimony, to which decision of the court the defendant then excepted, and tenders this bill of exceptions, and asks that same be signed and filed as a part of the record in this case." The court, in allowing the bill, qualified it as follows: "Defendant and his wife were shown to have been continuously fussing and fighting for some time prior to the shooting, and the evidence showed that defendant carried his gun with the avowed purpose of killing her and any other admirer she might have. The evidence was admissible to show motive, and was not remote, being shown to have occurred the month preceding the shooting."

The next bill complains that the court admitted the following testimony by the same witness: "The fights they had at my house, he accused her of other men. I heard him bring Frank Warren's name into it." This was objected to because irrelevant, not pertinent to any issue in the case, and not testimony against defendant, and it could only serve to prejudice the minds of the jury against the defendant. The court, in allowing this bill, qualified it as follows: "Defendant and his wife were shown by the evidence to have been continually fussing and fighting for some time prior to the shooting, and that defendant was jealous of his wife because of her alleged relations with Warren and other men. It is admissible to show motive, and was not remote. See pages 10 and 11 and 42, 43, 46, statement of facts."

The next bill is to the testimony of the appellant's wife, as follows: "Once when we were having a fuss (meaning witness and defendant) he picked up a piece of board and struck me on the wrist. (Witness was here asked by State's counsel to exhibit her wrist to the jury, showing and displaying to the jury a small scar on her wrist.)" This was objected to because it occurred long prior to the alleged shooting; that it did not tend to connect the defendant with the shooting, and it did not tend to show a motive for said shooting, and could only serve for the purpose of prejudicing the minds of the jury against defendant. The court, in allowing the bill, qualified it as follows: "The evidence in the case showed that defendant and his wife were constantly fussing and fighting, and that defendant was jealous of his wife and her relations with other men. The evidence was admissible to show motive, and was not shown to be remote, but within a week before the shooting, as will be seen by examining the statement of facts, pages 18 and 19."

The next bill shows that the appellant objected to the following

testimony of Simpson: "I examined a track where it appeared that some one might have jumped out of the south window (meaning a window of the school house where the shooting occurred). I measured this track with a string. Afterwards I applied this string to a pair of shoes that were sitting by the defendant's bed; they looked like the shoes the defendant had worn the day of the 'festival.' The measurement fit the shoe in length and breadth." The defendant objected to this testimony because said shoes had not been identified as the shoes of defendant, and there had been no proof that the defendant had ever worn the shoes so measured, and such testimony, if adduced at all, should have been introduced before the State closed its case, the same not being in rebuttal of any evidence brought out by defendant. The court overruled these objections and permitted the testimony, qualifying the bill as follows: "The evidence showed that the track measured by Simpson was the track made by the party who jumped from the window of the church and ran off in the direction that the witnesses say defendant jumped from the window and ran. The defendant in his testimony stated that he had gone home and undressed and placed his shoes beside his bed. The witness Simpson testified that he found defendant in bed undressed, and his shoes, which he measured, beside his bed. The measurement was made within an hour or two after the shooting by the witness Simpson, who was the justice of the peace and was endeavoring to trace the identity of the party who did the shooting; and all the circumstances and evidence clearly shows that the shoes measured were the shoes worn by the defendant on the day and at the time of the shooting. This testimony was clearly in rebuttal of defendant's alibi."

These several bills are clearly insufficient because they do not show within themselves what the evidence in the case was, so that this court can determine therefrom whether there was any error by the court in its action. However, each bill as qualified by the judge, we think, clearly shows that the testimony was admissible, and the court did not err in admitting any of it.

Appellant's fifth bill complains that the court committed error in charging the jury in paragraph 8 as follows: "If you believe from the evidence beyond a reasonable doubt that the defendant, Bogan Ward, with his malice aforethought, at the time and place alleged in the indictment, did unlawfully make an assault upon any other person and reasonable creature in being other than Florence Ward, and did shoot at such other person with a gun, the same being a deadly weapon, with the intent to kill and murder such other person, if any; and you further believe from the evidence beyond a reasonable doubt that by accident the defendant inflicted upon Florence Ward the injury, if any, intended to be inflicted by him upon such other person, then you are instructed that, in such event, the defendant would be as guilty of an assault upon said Florence Ward, if guilty at all, as if said assault, if any, had been originally made upon her by him." Appellant's

complaint of this charge is, "that it is not the law of this State, is material error, and was calculated to injure the rights of defendant." The court, in allowing the bill, qualifies it as follows: "The evidence in the case showed that defendant was jealous of his wife's relation with other men; that he had repeatedly declared his purpose to kill her and to kill any other man who showed her attentions; that he carried his gun for that purpose, and that four other persons besides her were hit with one or more shot from the same load that struck his wife. (See evidence Florence Ward, Arthur Preston, Willie Hunter and the defendant.) Defendant's defense was that of alibi, and he did not swear that he had shot at another than his wife. Defendant's counsel, in the examination of all witnesses, in his argument before the court and in argument to the jury, insisted that no one knew whether defendant, if he fired the shot, shot at some one of the other four persons who were struck or at his wife, but contended at all times that defendant did not do the shooting.

"This charge was fully warranted by all the facts in the case, and is the law, as enunciated in Richards v. State, 35 Texas Crim. Rep., 38, 30 S. W. Rep., p. 805, and Smith v. State, 95 S. W. Rep., 1057."

The next bill of exceptions is to paragraph 13 of the court's charge, quoting it. It is lengthy, and unnecessary for us to quote here. By this charge the court submits in appropriate language for the jury to find the defendant guilty of an aggravated assault if he intended to shoot someone else other than his wife, and as a matter of fact shot her but did not intend to kill her, simply inflicted a serious bodily injury upon her, and told the jury what the penalty for aggravated assault was. The appellant excepted to this charge on the following grounds: "That it is not the law of this State; is material error, and was calculated to injure the rights of the defendant.". The court, in allowing the bill, qualified it as the last one just above.

The next bill complains that the court refused to give his requested charge to the jury, which was as follows: "You are further instructed in this case that if you should believe from the evidence that the defendant, Bogan Ward, fired the shot that hit Florence Ward, yet if you should believe that said Bogan Ward fired at Colly Livingstone, or any other person than Florence Ward, you will find him not guilty; or if you have a reasonable doubt thereof, you will find him not guilty." The court, in allowing the bill, qualified it as follows: "There was no evidence that the defendant shot at Collie Livingstone, and the charge was and is on the weight of the evidence and against the weight of authority. See Richards v. State, 35 Texas Crim. Rep., 38, 30 S. W. Rep., 805, and Smith v. State, 95 S. W., p. 1058."

The complaint of the appellant to the several charges given by the court, and the objections thereto by the appellant, clearly were not such as to require this court to review them. When error is assigned on the charge of the court by either a bill of exceptions or motion for new trial, the specific error relied upon should be pointed out. It is

not sufficient to copy the charge complained of and then object to it because it is not the law of this State, is material error, and was calculated to injure the rights of the defendant, or any other such general complaint. Campbell v. State, 15 Texas Crim. App., 506; Thompson v. State, 32 Texas Crim. Rep., 265; Reynolds v. State, 17 Texas Crim. Rep., 413; Garello v. State, 31 Texas Crim. Rep., 56; Pollard v. State, 58 Texas Crim. Rep., 299; Quintana v. State, 29 Texas Crim. App., 401; Coleman v. State, 48 Texas Crim. Rep., 343; White v. State, 52 Texas Crim. Rep., 193; Roma v. State, 55 Texas Crim. Rep., 344.

Even if we could consider the several complaints to these several charges by the court, it is our opinion that they correctly enunciate the law applicable to this case. Penal Code (old article 695, new article 1125), and cases cited under the new article; Thomas v. State, 53 Texas Crim. Rep., 272; Honeycutt v. State, 42 Texas Crim. Rep., 129; Richards v. State, 35 Texas Crim. Rep., 38; Smith v. State, 95 S. W., 1058.

There is nothing else material raised by the motion for new trial which it is necessary for us to discuss. We have considered all of the complaints, and there being no reversible error pointed out, the judgment will in all things be affirmed.

*Affirmed.*

Davidson, Presiding Judge, absent.
[Rehearing denied November 8, 1911.—Reporter.]