# AUSTIN TERM, 1895.

[A great number of the cases decided at this term of the court will be found already reported in the Thirty-fourth volume of the Texas Criminal Reports, and the following cases were omitted for want of room in that volume.—Reporter.]

## POLK RICHARDS v. THE STATE.

*No. 685.    Decided April 20th, 1895.*

### 1.  Accident—Acts Done by.

No act done by accident is an offense, except in certain cases where there has been a degree of carelessness or negligence, which the law regards as criminal. P. C. Art. 45 [44.]

### 2.  Homicide—Not Negligent When.

When one in the execution or attempting to execute, an act made a felony by the penal law, shall kill another, though without an apparent intention to kill, the offense does not come within the definition of negligent homicide. P. C. Art. 695. [590.]

### 3.  Homicide by One Intending to Commit a Felony.

If one intending to commit a felony, and in the act of preparing for or executing the same, shall, through mistake or accident, do another act, which if voluntarily done would be a felony, he shall receive the punishment fixed by law to the offense actually committed. P. C. Art. 48. [47.]

### 4.  Attempting to Kill One Party and Killing Another—Murder When— Construction of Statutes.

When one, with his malice aforethought, shoots at a party, intending to kill him, but by accident kills a third party, such killing is not negligent homicide, but is murder; and this is the proper construction of our statutes above quoted.

### 5.  Accident—When Act is Not.

When a party with malice aforethought discharges his gun at another it is not an accident, within the meaning of P. C. Article 45 [44] ante, if he misses the party shot at and kills another unintentionally.

### 6.  Murder—Charge.

On a trial for murder, where it appeared from the evidence that defendant shot at a third party and killed the deceased. Held: That special instructions requested for defendant, to the effect that defendant could not be convicted of murder unless he killed the deceased with malice aforethought against deceased individually; that malice toward another individual could not be transferred to deceased so as to render defendant guilty of the unlawful killing of deceased with malice aforethought,

and that the purpose and intent to kill one person with or without malice, if it does not include the purpose and intent to kill the person slain, cannot be transfererd to the person actually killed, were properly refused to be given in charge to the jury by the court.

APPEAL from the District Court of Hays. Tried below before Hon. H. TEICHMULLER.

This appeal is from a conviction for murder in the second degree, with punishment assessed at eight years in the penitentiary.

The testimony shows that on the night of the 17th day of May, 1894, Juan Rios and Anastacia Tenoria, his wife (the deceased) and their daughter, were returning home about 9 o'clock from Miguel Sauseda's. On the road the wife and daughter, who were ahead, met the defendant, who was on horse-back. They testified that defendant cursed and tried to run his horse over them. Juan Rios, hearing the fuss, came up and words passed between him and defendant, Juan threatening to prosecute defendant next day. Defendant rode off, saying he would kill him. Juan, his wife and daughter, returned to the house of Miguel Sauseda. In a short time after they had gone back there defendant returned on foot with one Ellis, and defendant called Sauseda out of the house and asked him where Juan Rios was. He had a gun in his hand, and said he was going to kill Juan. Miguel and his wife remonstrated with and begged him not to do so. Anastacia Rios, deceased, and her daughter were standing in the doorway of the house when defendant fired, killing Anastacia and shooting out one of the eyes of the daughter.

Defendant's brother testified that just before the gun was fired he saw Juan Rios pass from one door of the house into the other with his gun, and that defendant pushed Ellis to one side, and saying, "That Mexican is going to shoot me," fired the fatal shots. The State's witnesses all testified that Juan Rios had no gun, and that there was no gun in the house.

The refusal of defendant's special requested instructions was the main ground of error complained of on the appeal. These requested instructions will be found copied in the opinion of the court.

*Gustave Cook* and *B. G. Neighbors*, for appellant.—1. No person shall be punished for any act unless the same is made a penal offense and a penalty is affixed thereto by the written law of this State; and no system of foreign laws, written or unwritten, can be appealed to to define or prescribe an offense; and no act is an offense against the laws of the State unless the same is defined in plain language and the proper punishment is affixed in the Penal Code of Texas. Arts. 1, 3 and 4, P. C.

2. No act done by accident is an offense except in certain cases where there has been a degree of carelessness or negligence which the law regards as criminal, (Art. 44, P. C.), and which has been specially provided for in the written law of the State, i. e., the statute, and the only provisions in the statute making carelessness or negligence an

offense are Ch. 13, P. C., Arts. 578 to 592, inclusive; and see especially Art. 590, excepting this case out of the operation of the chapter.

3.   It is not within the power of government to make an act or consequence criminal which was not intended to be done at all, but which was wholly the result of accident, and in no manner conceived of by the actor; for it is contrary to natural justice, right and reason, and it is no matter that the actor was at the time doing a lawful or unlawful, or even criminal, act, unless the consequence resulting was at least within the range of a reasonable possibility, which the actor might have suspected could happen.

4.   "Every person of sound memory and discretion who shall unlawfully kill any reasonable creature in being in this State with malice aforethought," necessarily means against the person slain, whether that malice aforethought be express or implied, and there is no written law of this State authorizing the transfer of malice aforethought in either case.

5.   Where one person involuntarily kills another without malice aforethought, without intent, and purely by accident or misfortune, and not in the perpetration or attempt to perpetrate arson, rape, robbery or burglary; nor by poison, starving, torture, nor with express malice, it is neither murder nor manslaughter, for manslaughter is voluntary homicide unlawfully done, nor is such a killing defined anywhere by statute as an offense, nor is any punishment prescribed therefor, unless it may be that the killing occur by carelessness or negligence in the performance of a lawful act, or an unlawful act, such as is by the penal law called a misdemeanor, or, not being a penal offense, would give just occasion for a civil action.

6.   Malice aforethought is as absolutely essential to constitute murder of the second degree as it is to constitute murder of the first degree, for the (divisible) crime of murder, in any degree, can be committed only by a person of sound memory and discretion, who shall unlawfully kill a reasonable creature in being in this State with malice aforethought, and the homicide must be voluntarily and unlawfully done to constitute manslaughter.

7.   Mistake and accident are essentially different in this:  One may kill another intentionally but under a mistake as to the identity of the person slain, while a killing done by accident cannot possibly contain the element of intent.  Ex: Gr: one may intentionally shoot John Jones to death under the mistake that it is John Smith, whom he intends to kill.  But if the missile discharged, after slaying John Jones, strike a plowshare and goes off at a tangent and strikes William Jenkins, whom the actor did not see at all, and of whose existence he was unaware, it is killing by accident and wholly unintentional, and intent is essential to constitute crime, except where carelessness or negligence supplies its place.

8.   If one, intending to commit a murder upon one person, and in the act of executing the same shall, through accident, kill another person

against whom the evidence excludes any idea of malice aforethought in the actor, such killing would be unlawful homicide without malice aforethought, and therefore, not more than manslaughter, for want of a malice aforethought essential to constitute murder in any degree and where the killing is by accident, not manslaughter for lack of being voluntary.

9.   If one in the act of committing a felony shall, through mistake or accident, do another act which, if voluntarily done, would constitute a felony, he shall receive the punishment affixed by law to the act actually committed (P. C., Art. 47).   But in order to constitute a punishable offense, the act done must be defined as a crime in the Penal Code, and a punishment affixed, and if the act perpetrated be in fact involuntary and unintentional, it is not an offense against the law, lacking the essential element of volition and intent.

10.   Where a homicide, such as is described in Proposition 8, is committed, by force of Art. 47, P. C., it has been said, but beyond doubt erroneously, that the law-presumes the killing voluntary, and therefore manslaughter.   But even, if it were true that the law presumes the act voluntary under such circumstances where the evidence absolutely rebuts that presumption and establishes the fact to be that there was no intent to kill the person slain, and that the killing was purely accidental (and not by mistake—which would be essentially different) it would not be murder, for want of malice aforethought against the person slain; nor manslaughter, for want of the necessary criminal volition against the party slain; and it is not negligent homicide; because especially excepted out of that offense by Art. 590, P. C.; and it is nowhere else in the statute defined to be a crime.

11.   A jury may imply malice aforethought where the evidence satisfies them, beyond reasonable doubt, of its existence in the mind of the accused at the time of the homicide; but they are the exclusive judges of the facts proved and of the weight to be given to the testimony; and the statute nowhere provides what fact, or facts, or that any particular fact or facts, shall constitute conclusive or presumptive proof of the existence of malice aforethought (Arts. 676, 677 and 678, Code Cr. Pr.,) but the existence of malice, like any and every other fact going to establish any and every element constituting the crime, must be proven to the satisfaction of the jury beyond reasonable doubt.   We have only to imagine the court presuming to instruct the jury as to the weight or effect of the evidence tending to prove a fact and the absurdity is manifest.   The implication is to be made by the jury as matter of fact and not by the court as matter of law.   However much the court may believe the evidence sufficient to warrant the conclusion that a killing is with malice aforethought, even an intimation to that effect would vitiate the charge.

*Mann Trice,* Assistant Attorney-General, for the State.—The law is well settled in this State that when the fact of an unlawful killing is proved, and no evidence tends to show express malice on the one hand or any justification, excuse or mitigation on the other, the law implies

malice, and the offense is murder in the second degree. However this principle may elsewhere be questioned by courts or commentators, it has been too long and too firmly established in the jurisprudence of this State to be now impugned by judicial authority. Harris v. State, 8 App., 91, et seq.

It is useless to inquire by what process of reasoning or by what peculiarity of early law this principle has been derived. Suffice it to say, it is a principle as well established in our system as adjudication can make it, and it is sanctified by age and repeated decisions, and not to be eliminated without grave consideration and by the exercise of the highest powers of government. And if it must be eliminated from the body of our laws, that duty would more properly devolve upon other departments of government. Id.

If A, unlawfully actuated by express malice attempting to kill B, kills C, the person against whom he has no ill will, it is murder in the second degree. McCoy v. State, 25 Texas, 33; Ferrell v. State, 43 Texas, 503; Jordan v. State, 10 Texas, 479; Murray v. State, 1 App., 417; Hill v. State, 11 App., 456; Neyland v. State, 13 App., 536; Turner v. State, 16 App., 379.

2. The theory of an accidental killing, or a killing by mistake, has but little support from the records in this case, and is only made to appear inferentially from the remark of the defendant at the time of the shooting, when he stated to his companion: "That Mexican is trying to shoot me." He did not say what Mexican, whether it was the deceased or her husband. Witness did not see the husband of the deceased, neither did he locate him near where the deceased was standing at the time of the fatal shot; but, on the contrary, it was shown that her husband, whom appellant claims was trying to shoot him, was unarmed and was behind the house, going in the direction of the town of San Marcos, at the time the defendant shot and killed his wife. To my mind, the evidence in the record clearly discloses that the killing of the deceased by defendant was upon express malice. It is shown that Juan Rios, the husband of deceased, in company with deceased and his daughter, had started home; that on the road, Juan Rios had stopped to talk with another Mexican, while his wife and daughter had gone some distance ahead of him when defendant met deceased and her daughter and endeavored to ride over them, and in making the attempt ran them from one side of the road to the other. That the defendant dismounted and was attempting to make an assault upon the girl, when her father came to her rescue and commanded him to desist, and said, "I will have you arrested tomorrow." Then defendant mounted his horse and says, "I will kill you tonight." Defendant then went and borrowed a gun from one of his neighbors, and the Mexican, his wife, the deceased, and her daughter, instead of going home returned to the house of Miguel Sauseda. Defendant soon came to Miguel's house, and provoked a difficulty by cursing and abusing deceased and others, and flourishing his gun in a threatening manner. He cursed the deceased, then pointed his gun at

Miguel and his wife, and Miguel's wife kneeled down to him and prayed him "for the Mother of God" not to kill them. Whereupon, defendant fired the fatal shot that caused the death of deceased, and also wounded and·put out one of the eyes of her daughter, who was standing nearby. In view of the fact of previous assault upon deceased and her daughter, and the harsh language used at the time, certainly rebuts his theory of not intending any malice towards deceased; but, on the contrary, shows the killing upon express malice.

HURT, PRESIDING JUDGE.—Appellant was convicted of murder in the second degree for shooting and killing Anestacia Tenoria. There is no manslaughter in this case. There is some testimony tending to show that appellant shot at Juan Rios, and killed the deceased, Mrs. Anestacia Tenoria. Counsel for appellant, under this state of the case, requested the court to instruct the jury as follows: "Unless the evidence establishes in your minds, beyond reasonable doubt, as a fact, that the defendant did unlawfully kill the deceased, with malice aforethought against her individually, you cannot convict the defendant of murder of either degree; and you are further instructed that malice aforethought against Juan Rios, however much entertained by the defendant, and the intention to kill him, cannot be transferred to the deceased, so as to render the defendant guilty of the unlawful killing of the deceased with malice aforethought." "To render the defendant guilty of manslaughter, the evidence must satisfy you, beyond a reasonable doubt, that the defendant did voluntarily, and of a purpose to kill her, the deceased, unlawfully and intentionally, shoot and kill her, as charged in the indictment. The purpose and intent to kill another person, with or without malice, if it does not include the purpose and intent to kill the person slain, cannot be transferred to the person actually killed." The court refused these instructions, and counsel for appellant assigned this for error. The question here presented is, if A. shoots at B., intending, with the malice aforethought, to unlawfully kill B.; but unintentionally shoots C., would A. be guilty of murder? At common law, evidently, he would. The authorities are all to this effect. How in this State? The definition of murder at common law and in this State is the same substantially,—precisely the same, 'so far as this question is concerned; for at common law and in Texas, to constitute murder, the killing must have been done with malice aforethought. At common law it is well settled, in fact, is placed beyond question, if a party, with his malice aforethought, attempts to kill a certain person, but in the attempt kills another, he is guilty of murder,—he is guilty of a homicide with malice aforethought. Counsel for appellant concede this to be the rule at common law, but contend that it is not the rule in Texas, because of the statutes of this State. If the statute speaks upon the subject, the common law must yield, and the statute prevails. The question, therefore, is, does the statute of this State change the common-law rule in regard to this matter? It is insisted. by counsel for the appellant that it does,

relying for his support of this position upon Article 44 of the Penal Code, which reads: "No act done by accident is an offense, except in certain cases specially provided for, where there has been a degree of carelessness or negligence which the law regards as criminal." These certain cases which the law provides for will be found in Chapter 13 of the Penal Code. Article 579 of that chapter provides that "if any person, in the performance of a lawful act, shall by negligence and carelessness cause the death of another, he is guilty of negligent homicide of the first degree." Article 587 provides that the definitions, rules and provisions of the preceding articles of this chapter with respect to negligent homicide of the first degree apply also to the offense of negligent homicide of the second degree, or such as is committed in the prosecution of an unlawful act, except when contrary to the following provisions: Article 588.—"Negligent homicide of the second degree can only be committed when the person guilty thereof is in the act of committing or in attempting the commission of an unlawful act." Article 589 defines an unlawful act. These provisions of the statute, including Article 44, and all the provisions of Chapter 13, furnish no support for the position of counsel for appellant, but Article 590 settles this question against the contention of the counsel for appellant. It provides that "when one, in the execution of or in attempting to execute an act made a felony by the penal law, shall kill another, though without an apparent intention to kill, the offense does not come within the definition of negligent homicide." The question then arises, if the party, in attempting to commit an act which is a felony by the law of this State, shall kill another, without intending to kill him, of what offense would he be guilty? This question is answered not only by the common law, but by Article 47, which reads: "If one, intending to commit a felony, and, in the act of preparing for or executing the same, shall, through mistake or accident, do another act which, if voluntarily done would be a felony, he shall receive the punishment affixed by law to the offense actually committed." In this case the other act—that done by accident—was the shooting and killing of deceased. Now, if appellant had voluntarily, with his malice aforethought, shot and killed the deceased intentionally, he would have been guilty of a felony, to-wit: murder. Therefore, he would be guilty of the murder of deceased if he, with his malice aforethought, shot at Juan Rios, intending to kill him, but by accident killed the deceased. If this is not the meaning or proper construction of this statute, it has no meaning, and has no practical application to the subject-matter under discussion, or any other subject. Counsel for appellant contends that there is a hiatus in the statute; that the Legislature should have named the offense of which the party would have been guilty if he violated Article 590, which reads: "When one, in the execution of or in attempting to execute an act made a felony by the penal law, shall kill another, though without an apparent intention to kill, the offense does not come within the definition of negligent homicide." It was altogether unnecessary to do so, the rule being well settled that where a party, in attempting to

commit a felony, kills another, whether by accident or intention, with malice aforethought, nothing less than murder could be the result. This rule was of such long standing, so well settled and understood, that it was altogether unnecessary to say anything upon this subject. Article 44, which provides that "no act done by accident is an offense," has no reference whatever to the accident in this case. When the appellant, with his malice aforethought, discharged that gun, it was not an accident, within the meaning of said article. We will not—for we think it unnecessary—elaborate this proposition. It is true, in one sense, it may have been an accident,—the killing of deceased,—but not within the meaning of the statute. We listened with great pleasure and interest to the learned and exhaustive argument of counsel for appellant, but we deem it unnecessary to elaborate this question. We are of the opinion that the court acted properly in refusing to submit to the jury the charges requested by counsel for appellant. The judgment is affirmed.

*Affirmed.*