Benny **AGUIRRE**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 62033.

Court of Criminal Appeals of Texas, Panel No. 1.

July 14, 1982.

On Rehearing July 1, 1987.

Leonard M. Roth, Houston, for appellant.

Carol S. Vance, Dist. Atty., John B. Holmes, Jr., Dist. Atty., Alvin M. Titus, and John S. Holleman, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

Before ODEN, TOM G. DAVIS and CLINTON, JJ.

## OPINION

CLINTON, Judge.

Appeal is taken from a conviction for murder. After finding appellant guilty, the jury assessed punishment at 99 years.

The indictment in the instant cause contains three paragraphs charging the same offense. See Article 21.24(b), V.A.C.C.P. The State ultimately abandoned one of the paragraphs and proceeded to trial with the two remaining paragraphs. In its charge to the jury, the court authorized a conviction for murder if the jury found that appellant committed the offense in either of the two manners alleged in the two paragraphs. The indictment in the instant cause alleges in pertinent part that on February 11, 1978, appellant:

"Did then and there unlawfully, intentionally and knowingly cause the death of Elizabeth Aguirre by shooting her with a gun....

And the defendant on or about February 11, 1978, did unlawfully, intentionally and knowingly attempt to commit and did commit a felony, to wit: criminal mischief and in the course of and in furtherance of the said felony did then and there attempt to commit and did commit an act which was clearly dangerous to human life, to wit: shooting a gun into an occupied dwelling which said act caused the death of Elizabeth Aguirre."

Esther Aguirre testified that she is appellant's ex-wife. Appellant and Aguirre were divorced in 1975 after 15 years of marriage. During the course of that marriage, the couple had four children including the deceased, Elizabeth Aguirre. On February 11, 1978, appellant went to Aguirre's home and demanded that she let him inside. She related that she refused to open the door and ran to the kitchen with Elizabeth. While standing in the kitchen, Aguirre heard a shotgun blast and saw that Elizabeth had sustained a gunshot wound. Aguirre related that the child died within 48 hours of reaching the hospital.

Appellant testified that he had gone to Aguirre's home on February 11 to speak to her about leaving the children alone at night. He testified that when his ex-wife refused to let him into the house, he went to his truck and retrieved a shotgun. He testified that he shot at the door in order to open it and did not consider the fact that someone could have been behind the door. Finally, appellant testified that he knew that three of his four children were probably in the house at the time he fired at the door with his shotgun.

■ Authorized by the charge of the court to find appellant guilty of either murder as alleged in the first paragraph pursuant to V.T.C.A. Penal Code, § 19.02(a)(1) or murder as alleged in the next paragraph pursuant to *id.*, § (a)(3), the jury returned a general verdict finding appellant "guilty of the offense of murder, as charged in the indictment." Thus, because of the way the State structured its case and the manner the jury was charged we are unable to determine which theory of alleged criminal responsibility prevailed in the jury room.[1]

Such is the complaint of appellant under his ground of error five, assailing the verdict of the jury as being so vague and indefinite that "there is no way of ascertaining which of two alternatives … created the basis for the jury's verdict." The point is determinative for if the jury opted for the felony-murder theory alleged in the second remaining paragraph of the indictment, its verdict could not be sustained for the reasons set forth in *Garrett v. State,* 573 S.W.2d 543, 545 (Tex.Cr.App.1978). See *Kuykendall v. State,* 609 S.W.2d 791, 794–795 (Tex.Cr.App.1980).

■ In *Garrett v. State,* supra, it was said that the felony murder rule dispenses with any inquiry into mens rea accompanying the homicide itself, for the underlying felony supplies the necessary culpable mental state. But, where, as there, the legal theory is that the intent with which the act of aggravated assault was committed is transferred to the act which caused death, the State does not sustain its theory by using "the very act which caused the homicide, committing an aggravated assault by use of a deadly weapon, as the felony which boosts the homicide itself into the murder category," *id.*, at 545. The Court observed that "application of the felony murder doctrine to situations such as this is an attempt to split into unrelated parts an indivisible transaction," *id.*, at 546. Accordingly, it was held that "the State improperly prosecuted appellant under the felony murder doctrine."

■ When, in *Ex parte Easter,* 615 S.W.2d 719 (Tex.Cr.App.1981), the Court revisited it, the lesson of *Garrett* was said to be inapplicable to a felony murder *indictment* for causing the death of a child when the underlying felony alleged is injury to a child, and concluded the indictment was not fundamentally defective. *Id.*, at 721. On the evidentiary point argued in *Easter*—the matter with which we are more concerned in the instant case—the Court simply rejected an effort to attack collaterally the sufficiency of the evidence to support the conviction. *Ibid.* Nothing held in *Easter* militates against our application of the principles enunciated in *Garrett* to the case at bar.[2]

■ Since the general verdict of the jury may well have rested upon the felony murder theory which we have held untenable in the circumstances of this case, the convic-

1. The judgment of the trial court adjudicates appellant guilty of the offense of murder "as charged in the first and third paragraphs of the indictment…," and the sentence contains a like recitation. In his sixth ground of error appellant asserts the quoted finding by the trial court renders the judgment and sentence void. The recitation is erroneous in that it does not conform to the verdict rendered by the jury, Article 42.01, § 1, paras. 8 and 9, V.A.C.C.P., and when we have the necessary data and evidence in the record the Court is authorized by Article 44.24, *id.*, to reform a judgment and sentence in a proper case so as to conform them with the verdict of the jury. *Knight v. State,* 581 S.W.2d 692, 694 (Tex.Cr.App.1979). However, since we must sustain one of appellant's grounds of error and reverse the judgment, this is not a proper case for reformation.

2. *Easter* did observe that "the crime of injury to a child is not a lesser included offense to the crime of murder," whereas in *Garrett* "the aggravated assault was a lesser included offense in the homicide." When testing fundamental sufficiency of a felony murder indictment to allege an offense, however, that perceived difference is of little moment. So long as the underlying offense is a felony other than voluntary or involuntary manslaughter, the crux of felony murder under § 19.02(a)(3) is killing by committing or attempting to commit "an act clearly dangerous to human life" in the course of furtherance of the underlying felony or in immediate flight therefrom. Of course, as in *Garrett,* it will often be the case that the homicide is committed "while the felon is engaged in highly dangerous conduct," Practice Commentary following § 19.-02, but nothing in the statute *requires* that the conduct constitute a lesser offense included in homicide.

tion cannot be upheld. *Stromberg v. California,* 283 U.S. 359, 367–370, 51 S.Ct. 532, 535–36, 75 L.Ed. 1117 (1931).

The judgment of conviction is reversed and the cause is remanded.[3]

TOM G. DAVIS, Judge, dissenting.

Appeal is taken from a conviction for murder. After finding appellant guilty, the jury assessed punishment at 99 years.

The majority reversed appellant's conviction on the basis that the felony murder allegation cannot be sustained for the reasons set forth in *Garrett v. State,* 573 S.W.2d 543. The majority therefore holds that because appellant's conviction may have rested upon the felony murder paragraph of the indictment, the judgment must be reversed.

*Garrett* was a prosecution for murder under the felony murder rule as set forth in V.T.C.A., Sec. 19.02(a)(3). There, the defendant pointed a weapon at the victim. The State prosecuted the defendant under the felony murder rule and alleged that while he was in the course of committing the offense of aggravated assault with a deadly weapon and in the furtherance of the commission of that offense he committed an act clearly dangerous to human life, namely, pulling a loaded pistol out of his pocket which in turn caused the death of the victim.

The judgment in *Garrett* was reversed. This Court noted that the felony murder rule calls for the transfer of intent from one criminal act to another. It was found that the defendant's conviction could not stand because the aggravated assault and the act resulting in the homicide were one and the same. It was therefore held that in order for the evidence to be sufficient to

support a conviction under the felony murder rule, there must be a showing of felonious criminal conduct other than the assault which causes the homicide.

In the instant cause, the indictment alleges and the proof shows that appellant was engaged in felonious criminal conduct, namely, felony criminal mischief at the time the deceased was killed. Therefore, as required in *Garrett,* there was a showing of felonious criminal conduct other than the assault which caused the homicide. Unlike *Garrett,* appellant's act of felony criminal mischief in shooting at the house and the resulting homicide of his daughter were not one in the same. In this case, appellant attempted to blow open a door with a shotgun, a property offense, and in the furtherance of such offense, the deceased was killed. I cannot agree that *Garrett* requires the reversal of appellant's conviction and therefore must dissent.

Before the court en banc.

## OPINION ON STATE'S MOTION FOR REHEARING

McCORMICK, Judge.

Appellant was tried for the murder of his thirteen year old daughter. The evidence showed that appellant and the child's mother were married for a strife-ridden fifteen year period. After their divorce in 1975, the trouble continued. Testimony at trial alluded to several instances in the intervening years during which appellant threatened to kill his wife. During the evening of February 10, 1978, the appellant went to his ex-wife's home. Upon discovering that she was gone and had left his three daughters, ages fifteen, thirteen and seven alone, appellant became enraged. He began berating his ex-wife's conduct to his daugh-

---

**3.** In his first and second grounds of error appellant challenges sufficiency of evidence to support a conviction under the first paragraph of the indictment, contending there is no evidence that he "intentionally and knowingly" caused the death of his daughter. The State argues that when he fired through the door appellant intended to kill his former wife and that felonious intent in law transferred over to the actual slaying of the child. The trial court charged the jury on causation pursuant to V.T.C.A. Penal

Code, § 6.04(b)(2). For present purposes we are unable to say the evidence is not sufficient to support that theory of criminal responsibility.

In his third and fourth grounds of error appellant challenges sufficiency of the evidence to support his conviction under the second paragraph of the indictment. Given our disposition of his fifth ground of error and the likelihood of retrial we need not determine whether the evidence was sufficient to show the fair market value of the damaged property.

ters. When his eldest daughter objected to his characterizations of her mother, appellant replied that he was going to kill his ex-wife. The next afternoon, appellant drove to his ex-wife's house and parked his truck in front of the house. When his ex-wife came to the front door, he demanded that she come out and talk to him. She told him to go away and then went back inside the house. At that point, appellant got his shotgun out of the truck, walked up on the porch and fired a blast through the front door. Pellets from this blast passed through the door, through the house and into the kitchen, striking appellant's thirteen year old daughter. Next appellant went to his ex-wife's car, raised the hood and fired another shotgun blast into the car's engine. Then he walked to the back of the house and fired a final shotgun blast into the back door. Appellant then kicked in the back door and found his daughter lying wounded on the kitchen floor. Appellant testified at trial that he shot at the door only in order to open it and had no intent to kill anyone.

Frank Salazar, appellant's ex-brother-in-law testified that appellant phoned him during the afternoon of February 11, 1978 and told him that he (appellant) had just shot his daughter. He asked Salazar to summon the police and an ambulance. Salazar testified that appellant said he was trying to shoot his ex-wife and instead shot his daughter.

Finally, testimony showed that the victim lived for approximately forty-eight hours after being shot. Cause of death was a shotgun wound to the head.

On original submission, appellant argued in his fifth point of error that the jury's verdict on guilt-innocence was void in that it did not apprise him of the actual statute under which he was convicted. A review of the record shows that the indictment contained three paragraphs charging the same offense. The State abandoned one of the paragraphs and proceeded to trial on the two remaining paragraphs. In its charge to the jury the court authorized a conviction for murder if the jury found that appellant committed the offense in either

of the two manners alleged in the two paragraphs. The indictment alleged in pertinent part that the appellant:

"did then and there unlawfully intentionally or knowingly cause the death of Elizabeth Aguirre by shooting her with a gun.

"And the Defendant did ... unlawfully intentionally and knowingly attempt to commit and did commit a felony, to wit: Criminal Mischief and in the course of and in furtherance of the said felony did then and there attempt to commit and did commit an act which was clearly dangerous to human life, to wit: shooting a gun into an occupied dwelling which said act caused the death of Elizabeth Aguirre."

The verdict form signed by the foreman of the jury reads as follows:

"We, the Jury, find the defendant, Benny Aguirre, guilty of the offense of murder, as charged in the indictment."

After reviewing appellant's contention, a panel of this court reversed appellant's conviction after determining that the general verdict from the jury made it impossible to determine upon which theory, either V.T.C.A., Penal Code, Section 19.02(a)(1) or Section 19.02(a)(3)—the felony murder rule, appellant was convicted. The panel, relying on this Court's opinion in *Garrett v. State*, 573 S.W.2d 543 (Tex.Cr.App.1978), went on to hold that if indeed appellant was convicted under Section 19.02(a)(3) the appellant's conviction could not stand because in the allegations made under V.T.C.A., Penal Code, Section 19.02(a)(3), the State relied on the same act which constituted the underlying felony as the act causing the homicide.

We find the panel opinion untenable in light of our decision in *Murphy v. State*, 665 S.W.2d 116 (Tex.Cr.App.1983). In *Murphy v. State*, supra, the application paragraph of the court's charge read as follows:

"Therefore, if you believe from the evidence beyond a reasonable doubt that the defendant, Clyde Clifton Murphy, did ... commit the felony offense of Arson by then and there starting a fire in a habitation located in Angelina County, Texas, owned by Clyde Clifton Murphy, with

intent to damage and destroy said habitation and to collect insurance for such damage and destruction, and while in the course of and furtherance of the commission of said offense did then and there commit an act clearly dangerous to human life, to wit: did start a fire in a habitation, and did thereby cause the death of an individual, John Thomas Johnson, you will find the defendant guilty."

Because we believe *Murphy v. State,* supra, clearly controls the case at bar, we quote extensively from that opinion:

"Appellant further maintains the merger doctrine operates as a bar to his prosecution for felony murder. He argues, 'the conduct that allegedly constituted the gist of the underlying felony, namely, "starting a fire," was the exact same act alleged to have been clearly dangerous to human life and thus was 'inherent in the homicide.'

"Sec. 19.02(a)(3), supra, the 'felony murder rule', provides that a person commits an offense if he:

'commits or attempts to commit a felony, other than voluntary or involuntary manslaughter, and in the course of and in furtherance of the commission or attempt ... he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.'

"In *Garrett v. State,* 573 S.W.2d 543 (Tex.Cr.App.1978), however, we held that the felony murder doctrine does not apply where the precedent felony is an assault inherent in the homicide. Garrett's conviction could not stand because the underlying aggravated assault and the act resulting in the homicide were one and the same. This limitation on the felony-murder rule is known as the merger doctrine.

"In the instant cause, the indictment alleges and the proof shows that appellant was engaged in felonious criminal conduct, namely, arson at the time the deceased was killed. Therefore, as required in Garrett, there was a showing of felonious criminal conduct other than the assault which caused the homicide. Un-

like Garrett, appellant's act of arson in setting a habitation on fire and the resulting homicide of the victim were not one in the same. In this case, appellant attempted to set fire to a house in order to destroy it and collect insurance money, a property offense, and in the furtherance of such offense, the deceased was killed.

.    .    .    .    .

"Appellant is incorrect in his assertion that Garrett requires the reversal of his conviction."

The same reasoning is applicable in the case at bar. The appellant testified at trial that on the day of the offense he had gone to his ex-wife's home to speak to her about leaving the children alone at night. When his ex-wife refused to let him into the house, appellant went to his truck and retrieved his shotgun. He testified that he shot at the door in order to open it and did not consider the fact that someone could have been behind the door. Unbeknownst to appellant, one of his children was standing behind the door and was killed by the blast fired from appellant's shotgun.

■ If indeed, the appellant was engaged in felonious criminal conduct, that is committing felony criminal mischief by attempting to blow open a door with a shotgun, this conduct was clearly a property offense. In the furtherance of this offense, the deceased was shot and killed. Unlike the situation in *Garrett v. State,* supra, the appellant's act of criminal mischief and the deceased's resulting homicide were not one in the same. *Garrett v. State,* supra, does not mandate the reversal of this case.

■ Next we determine if the submission of a general verdict form constitutes reversible error. Article 21.24(b) V.A.C. C.P., provides that each separate count in an indictment may contain as many separate paragraphs charging the same offense as necessary. The one count indictment in the instant case contained two paragraphs charging two different theories as to the victim's murder. In *McArthur v. State,*

132 Tex.Cr.R. 447, 105 S.W.2d 227, 230 (1937) (Opinion on Rehearing), this Court wrote:

"... The rule seems well settled that, if but one transaction is involved, and the offense be one which may have been committed in any one of several ways, the pleader may charge in the indictment in one count that such offense had been committed by doing this, and that, and the other, and there will be no duplicity, and need be but a verdict of guilty; or the pleader may set out in separate counts each one of the various ways in which it is claimed the offense might have been committed, in which event also there need be but a verdict of guilty." 105 S.W.2d at 230.

Because appellant's indictment did not allege different offenses but only alleged different ways of committing the same offense, the court properly furnished the jury with a general verdict form. *Riley v. State*, 658 S.W.2d 818 (Tex.App.—Ft. Worth 1983, no petition); *Bailey v. State*, 532 S.W.2d 316, 322 (Tex.Cr.App.1975); *Floyd v. State*, 164 Tex.Cr.R. 50, 296 S.W.2d 523, 528 (1956).

■ In his first point of error, appellant contends that there is no evidence to show that he "intentionally and knowingly" caused the death of his daughter. The State argues that when he fired through the door appellant intended to kill his former wife and that felonious intent transferred over to the killing of the child. We agree.

V.T.C.A., Penal Code, Section 6.04(b)(2), provides as follows:

"(b) A person is nevertheless criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contemplated, or risked is that:

(2) a different person or property was injured, harmed, or otherwise affected."

The jury was charged on the law of transferred intent.

Viewing the evidence in the light most favorable to the verdict of guilty, we find the evidence sufficient to show that appel-

lant was acting with the intent to kill his wife. This is especially true in light of appellant's statements to his daughters the evening before the offense and appellant's statements to Salazar immediately after the offense. Under Section 6.04(b)(2), this intent carried over to the death of the victim. Appellant's first point of error is overruled.

In his second point of error, appellant argues that fundamental error occurred when the trial court included in its charge on guilt-innocence the unproven allegation of murder under V.T.C.A., Penal Code, Section 19.02(a)(1). Because we have found the evidence sufficient to support a conviction for Section 19.02(a)(1) murder in point of error one, we find this point of error to be without merit.

In his third and fourth points of error, appellant argues that the evidence is insufficient to support a conviction for murder under V.T.C.A., Penal Code, Section 19.02(a)(3) and the underlying offense of criminal mischief. As noted above one of the paragraphs of the indictment alleged that appellant committed murder by virtue of the felony-murder doctrine. In this instance the underlying felony was criminal mischief. Appellant specifically alleges that the evidence was insufficient to show the fair market value of the damaged property and destroyed property.

■ Where a general verdict is returned, and the evidence is sufficient to support a finding under any of the counts submitted, the verdict will be applied to the offense finding support in the facts. *Adair v. State*, 155 S.W.2d 170, 235 S.W.2d 170, 172 (1950) (Opinion on Rehearing). See also: *Bailey v. State*, 532 S.W.2d 316 (Tex.Cr. App.1975); *Cavazos v. State*, 365 S.W.2d 178 (Tex.Cr.App.1963). Since we have already found the evidence sufficient to support a conviction under Section 19.02(a)(1) murder, we will not review the sufficiency of the evidence to show a Section 19.02(a)(3) murder. These points of error are overruled.

■ In his final point of error, appellant argues that the judgment and the sentence

are void in that they state specific findings not made by the jury. As shown above, the jury verdict reads that the appellant was found "guilty of the offense of murder, as charged in the indictment." The judgment quotes the jury verdict and then continues with the following:

"It is therefore considered, ordered, and adjudged by the Court that the Defendant is guilty of the offense of a felony, murder as charged in the first and third paragraphs of the indictment...."

The sentence contains similar language.

At the time of appellant's trial, Article 42.01, V.A.C.C.P., provided in pertinent part:

"Sec. 1. A 'judgment' is the declaration of the court entered of record, showing:

.       .       .       .       .

8. The verdict;

9. In the case of a conviction, that it is considered by the court that the defendant is adjudged to be guilty of the offense as found by the jury; ..."

Article 42.02, V.A.C.C.P., provided:

"A 'sentence' is the order of the court in a felony or misdemeanor case made in the presence of the defendant, ... and entered of record, pronouncing the judgment, and ordering the same to be carried into execution in the manner prescribed by law."

Although not a model of draftsmanship, we find that the language set out in the judgment and sentence properly describes the findings of the jury. It is suggested that in the future, in a similar situation, the language merely set out that the accused "is guilty of the offense of murder."

■ Moreover, even if we found that the judgment and sentence improperly reflected the findings of the jury, the proper remedy would not be reversal of appellant's case, but reformation of the judgment and sentence. Article 44.24(b), V.A.C.C.P.

We find no error here. This point of error is overruled.

The judgment is affirmed.

CLINTON, J., dissents, adhering to the opinion on original submission.

TEAGUE, Judge, dissenting.

Because I find that the majority panel opinion in this cause correctly held that the facts of this cause will not support a conviction for murder pursuant to the provisions of V.T.C.A., Penal Code, § 19.02(a)(3), and the majority of this Court refuses to adhere to that decision, I respectfully dissent.

I also dissent to the majority of this Court relying upon this Court's terribly reasoned opinion of *Murphy v. State*, 665 S.W.2d 116 (Tex.Cr.App.1983).

The record in this cause reflects that Benny Aguirre, appellant, was convicted by a jury of the offense of murder, "as charged in the indictment." The jury was instructed that if it found beyond a reasonable doubt that appellant "intentionally and knowingly cause[d] the death of Elizabeth Aguirre, (who was then thirteen years of age and was appellant's natural daughter), by shooting her with a gun," see V.T.C.A., Penal Code, Section 19.02(a)(1), or if they found that he did "intentionally or knowingly attempt to commit and did commit a felony, to-wit: criminal mischief, and in the course of and in furtherance of the said felony did then and there attempt to commit and did commit an act which was clearly dangerous to human life, to wit: shooting a gun into an occupied dwelling which said act caused the death of Elizabeth Aguirre," see V.T.C.A., Penal Code, Section 19.02(a)(3), supra, the felony murder statute, it could find him guilty of the offense of murder. Because the jury's verdict does not specify under which theory appellant was found guilty, I am unable to state "which theory of alleged criminal responsibility prevailed in the jury room."

On original submission, a majority of a panel of this Court ordered the conviction of appellant reversed, after holding that "... [I]f the jury opted for the felony-mur-

der theory alleged in the second remaining paragraph of the indictment, its verdict could not be sustained for the reasons set forth in *Garrett v. State*, 573 S.W.2d 543, 545 (Tex.Cr.App.1978). See *Kuykendall v. State*, 609 S.W.2d 791, 794–795 (Tex.Cr. App.1980)."

I pause to point out that where there is but one offense charged in two counts of an indictment, which is permissible pleading, see Art. 21.24, V.A.C.C.P., and the evidence is found to be sufficient to support a finding of guilt under either theory, a general verdict of guilt may be applied to either theory, and it is not necessary for the jury to designate under which theory it found the defendant guilty. *Bailey State*, 532 S.W.2d 316 (Tex.Cr.App.1976); *Hintz v. State*, 396 S.W.2d 411 (Tex.Cr.App.1965).[1] However, when the general verdict of the jury might rest upon an "untenable" theory of the way the offense was committed, i.e., if one of the counts authorizes conviction on facts which do not constitute an offense, and the jury's verdict might be based upon that count, then a general verdict of guilt cannot be sustained. *Martin v. State*, 142 Tex.Cr.R. 623, 156 S.W.2d 144 (1941).

The facts of this cause reflect that Elizabeth met her death while inside of her mother's, the appellant's ex-wife's, residence. Appellant and his ex-wife previously had sustained what appears to have been an unhappy marriage, which had ended in divorce approximately three (3) years before Elizabeth met her untimely death. By appellant's own testimony, on the occasion in question, after confronting his ex-wife outside of her residence, with his ex-wife thereafter going inside of her residence and shutting the front door, appellant, who was then upset and mad at his wife, and possibly intoxicated, intentionally fired at least two shotgun blasts from a sawed-off shot gun at the residence; first at the front door of the residence and then at the rear door of the residence, which part of the residence housed the kitchen. Elizabeth's death resulted when her body, which was found in the kitchen area of the residence,

was struck by shots fired from the shotgun. The record is not completely clear whether it was shot from the first blast or shot from the second blast that caused Elizabeth's death.

The State's expert witness on what it would cost to repair the damages appellant inflicted on the residence testified that the total repair cost to the residence was in excess of $600. The expert was not asked, nor did he state, what it would cost to repair the damage that was inflicted to the front door area of the residence versus what it would cost to repair the damage that was inflicted to the rear door area of the residence, or vice versa. He simply gave a total repair cost figure for the necessary repair work for the damages appellant's shotgun blasts inflicted. This becomes important. See *post*.

I find from the above facts that the jury could have inferred from the facts that each time appellant fired his shotgun he intended to commit the offense of felony criminal mischief to the residence of his former spouse. See *post*.

In this instance, the jury was instructed on the provisions of V.T.C.A., Penal Code, Sec. 6.04(b)(2), which provides that a person is criminally responsible for causing a result if the only difference between what actually occurred and what that person desired, contemplated or risked is that a different offense was committed or a different person or property was injured, harmed or otherwise affected. The jury was clearly warranted in finding appellant guilty of the offense of murder, by "unlawfully, intentionally and knowingly caus[ing] the death of Elizabeth Aguirre by shooting her with a gun."

Notwithstanding this finding, I must still make the determination whether the majority panel opinion was correct in holding that the facts of this cause do not support the felony murder allegation of the indictment, as contained in paragraph three of the indictment. After having carefully reviewed the facts of the case, and having found that it is possible that the jury might

---

1. Also see Art. 37.07, Sec. 1(c), V.A.C.C.P.

have based its verdict upon the instruction that incorporated the provisions of Section 19.02(a)(3), supra, the felony murder statute, I must next decide whether the facts are sufficient to support the felony murder count of the indictment. I find that they are insufficient.

Before a violation of Section 19.02(a)(3), supra, may occur, it must be established that the defendant "committed or attempted to commit a felony, other than voluntary or involuntary manslaughter, and in the course of and in furtherance of the commission or attempt ... of that felony he committed or attempted to commit an act clearly dangerous to human life that caused the death of an individual."

At the time of the alleged offense, the offense of felony criminal mischief could be committed if a person, without the effective consent of the owner, intentionally or knowingly damaged tangible property of the owner and the amount of the pecuniary loss was $200 or more but less than $10,-000. See V.T.C.A., Penal Code, Section 28.-03, prior to amendment. In this instance, I find that the evidence is more than sufficient to reflect that appellant twice intended to commit the offense of felony criminal mischief to the residence.

The majority panel opinion primarily relied upon *Garrett v. State*, supra, as its principal authority for holding that the facts of this cause would not support the felony murder allegation of the indictment. Although I find that the majority panel opinion reached the correct result, I also find its authority of *Garrett v. State*, supra, was wrongly decided.

The facts set out in *Garrett v. State*, supra, reflect that the defendant went inside of a Ben Franklin store, got into an altercation with a clerk, pulled a gun, intending to scare the clerk, but shot the clerk instead, as a result of which the clerk died.[2] The State alleged that the defendant violated the felony murder statute, see

Sec. 19.02(a)(3), supra, alleging that the predicate offense was aggravated assault. On appeal, the defendant raised the issue "whether the felony-murder doctrine, as codified in Sec. 19.02(a)(3), supra, should apply where the precedent felony is an assault and is inherent in the homicide." A panel of this Court found that the State, by its allegations, was attempting to use the very act, aggravated assault, which caused the murder, as the felony which boosted the homicide itself into the murder category, and held that "[t]o allow this would make murder out of every aggravated assault that results in a death. It would relieve the State of the burden of proving an intentionally or knowingly caused death in most murder cases because murder is usually the result of some form of assault." The panel quoted the following, which I find states the common law rule of felony murder, from the opinion that then Chief Justice Cardozo had authored for the New York Court of Appeals, see *People v. Moran*, 246 N.Y. 100, 158 N.E. 35 (1927): "... The felony that eliminates the quality of the intent must be one that is independent of the homicide and of the assault merged therein, as, e.g., robbery or larceny or burglary or rape," and held that under the facts of the case the alleged aggravated assault and the act resulting in the homicide were one in the same. It held: "The application of the felony murder doctrine to situations such as this is an attempt to split into unrelated parts *an indivisible transaction*. [Before the felony murder statute can be invoked and applied] [t]here must be a showing of felonious criminal conduct other than the assault causing the homicide. Any other result in this case would allow circumvention of the statutory limits of the felony murder statute ... The legislative prohibition against resting a Sec. 19.02(a)(3) prosecution on voluntary manslaughter *necessarily includes a prohibition against resting such*

---

**2.** Though not stated in the opinion of *Garrett*, supra, the record of appeal in that cause reflects that the State's witness Adrian Meeks, who was five years old when the defendant's trial occurred, testified that when the shooting occurred he was standing directly behind the defendant. Meeks testified that "he [the defendant] took it [the pistol] out and he [the defendant] shot—[then] *he pointed it [the pistol] and shot the white man [the deceased]* ... and [then he, the defendant,] ran out the door [of the store]. (My emphasis.)

*a prosecution on offenses statutorily includable in voluntary* [or involuntary] manslaughter. To hold to the contrary would render the statute meaningless and its effect nil." (My Emphasis.) The majority panel opinion thereafter held that the facts of the case did not support the allegations of the indictment, and ordered the indictment dismissed. I find that the panel opinion of *Garrett v. State, supra,* erroneously interpreted Section 19.02(a)(3), supra. We should expressly overrule *Garrett v. State, supra.*

Section 19.02(a)(3), supra, expressly provides that the offense of felony murder cannot be sustained if the underlying felony is voluntary or involuntary manslaughter. It, however, does not make reference to lesser included offenses. Had the Legislature wanted to exclude lesser included offenses, in addition to the offenses of voluntary and involuntary manslaughter, it could have easily so stated. It, however, did not so state and it is not the function of this Court to act legislatively. *Garrett,* supra, erroneously held that any lesser includable offenses of voluntary manslaughter, and implicitly also any lesser included offenses of involuntary manslaughter, were excluded from the statute. They are not.

I also find that *Garrett,* supra, erroneously held that the word "act" means "an indivisible transaction." The word "act", however, is defined in the Penal Code, see V.T.C.A., Section 1.07(a)(1), to mean, not an indivisible transaction, but, instead, "a bodily movement, whether voluntary or involuntary, and includes speech." Under the facts in *Garrett,* supra, the defendant's pointing his pistol at the store clerk constituted the offense of aggravated assault, see V.T.C.A., Penal Code, Section 22.-02(a)(4), and under Section 19.02(a)(3), supra, his *pulling of the trigger* constituted bodily movement, and was thus an independent "act." Thus, the defendant in *Garrett v. State,* supra, was properly charged and convicted of the offense of felony murder. Thus, in *Garrett,* supra, there were two separate and independent acts.

The panel decision of *Garrett,* supra, gains no strength by this Court's later decision of *Ex parte Easter,* 615 S.W.2d 719 (Tex.Cr.App.1981), in which this Court expressly held that "an indictment alleging felony murder was not fundamentally defective so as to be susceptible to challenge for the first time in a post-conviction writ of habeas corpus ..." It also expressly held that "[p]etitioner may not, in this habeas corpus proceeding, collaterally attack the sufficiency of the evidence to support the conviction ..." Beyond these two express holdings, whatever else might have been stated in *Ex parte Easter,* supra, is dicta and should not be considered as binding precedent.

As previously pointed out, the jury could have inferred from the facts of this case that appellant was criminally responsible for causing the death of his daughter, because under Section 6.04(b)(1), "[a] person is criminally responsible for causing a result if the only difference between what actually occurred (Elizabeth's untimely death) and what [appellant] desired, contemplated, or risked (intending to commit the offense of felony criminal mischief, when he twice fired his shotgun at the residence, knowing that one or more individuals were inside, which showed an utter disregard for human life) was that a different offense (murder of Elizabeth) was committed."

Section 6.04(b)(1), supra, is patterned after former penal code Article 42, which provided: "One intending to commit a felony and who in the act of preparing for or executing the same shall through mistake or accident do another act which, if voluntarily done, would be a felony, shall receive the punishment affixed to the felony actually commited." See *Richards v. State,* 35 Tex.Cr.R. 38, 30 S.W. 805 (Tex.Cr.App. 1895), for further discussion of the statute. The main difference in the statutes is that present Section 6.04(b)(1), supra, does not require that the predicate offense must be a felony, whereas former Art. 42 did. Further, former Art. 42 was a punishment statute, whereas Sec. 19.02(a)(3), supra, is an offense within itself. Thus, Section 6.04(b)(1), supra, is an extremely general

statute. It can, however, be applied to a Section 19.02(a)(3), supra, offense. *Williams v. State*, 567 S.W.2d 507, 509 (Tex.Cr.App.1978). However, Section 19.-02(a)(3), supra, the felony murder statute, so denominated because the murder results from the commission or attempted commission of another felony offense, though it has many similarities to Section 6.04(b)(1), supra, it is a very specific statute. As the "Practice Commentary" points out, "Under it the mere attempt or commission of a felony no longer suffices to construct intent or knowledge: the actor must kill while intending or committing *an act* clearly dangerous to human life in the course or furtherance of the felony ..." (My Emphasis.)

I also find that this Court's decision of *Murphy v. State*, 665 S.W.2d 116 (Tex.Cr.App.1983), which erroneously relied upon *Garrett v. State*, supra, is misinterpreted in light of the provisions of Section 19.-02(a)(3), supra. The facts in *Murphy v. State*, supra, clearly reflect that the State could have easily prosecuted the defendant under Section 6.04(b)(1), supra. Instead, it chose to prosecute the defendant under Section 19.02(a)(3), supra. However, the facts as set out in *Murphy v. State*, supra, do not reflect what independent *act* the defendant committed in the course of and in furtherance of his commission of the offense of arson, which act had to have been clearly dangerous to human life that caused the death of the deceased in that case. The opinion, however, expressly states: "... appellant's act of arson in setting a habitation on fire and the resulting homicide of the victim were not one in the same [act]."

I do find in *Murphy v. State*, supra, that this Court erroneously held that the felony murder statute does not apply where the precedent felony is an assault inherent in the homicide. As previously observed, Section 19.02(a)(3), supra, provides for no such limiting feature. The only limiting feature in Section 19.02(a)(3), supra, as far as offenses go, is that the predicate or original felony offense cannot be either voluntary or involuntary manslaughter.

I now return to the case at Bar. Will the facts that were presented to the jury support the allegation of the indictment that appellant committed the offense of felony criminal mischief and in the course of and in furtherance of that offense he also committed an act clearly dangerous to human life that caused the death of Elizabeth? I am compelled to answer the question in the negative.

In this cause, appellant was shown to have intended to commit the offense of felony criminal mischief, not once but twice. A result of his firing his shotgun at his ex-wife's residence was his daughter's death. These facts clearly bring the case within the provisions of Section 6.04(b)(1), supra. However, do they also establish a violation of Section 19.02(a)(3), supra? To answer this question in the affirmative requires that the evidence reflects that in the course of and in furtherance of the commission of either felony criminal mischief appellant committed or attempted to commit *an act* clearly dangerous to human life that caused the death of Elizabeth. What intervening, independent act did the State establish that appellant committed or attempted to commit after he had committed the felony criminal mischiefs? I have carefully searched the record for evidence of an intervening, independent act and conclude that I must answer the question in the negative. By the very terms of Section 19.02(a)(3), supra, the death causing act must be in addition to the predicate felony offense, in order to elevate the degree of culpability to that accorded the offense of first degree murder. As previously noted, Section 19.02(a)(3), supra, is not merely a statute providing for a greater punishment for unlawfully causing the death of another, cf. former Art. 42, supra, but actually states the criminal offense of murder.

Because the facts will not support either the allegation contained in the third paragraph of the indictment or a finding of guilt, appellant's conviction should be reversed.

Given the above, the majority opinion's reliance upon *Murphy v. State*, supra, is clearly erroneous.

Appellant's conviction should be reversed and not affirmed and the State should be barred from retrying appellant on the third paragraph of the indictment.