11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Matthew Donnell Lowry

Appellant

Vs.      
            No. 11-01-00394-CR --  Appeal from Taylor
County

State of Texas

Appellee

 

The jury
convicted appellant of the offense of murder and assessed his punishment at
confinement in the Institutional Division of the Texas Department of Criminal
Justice for a term of 30 years and imposed a fine of $8,000.  Appellant raises two issues on appeal.  We affirm.

Appellant attacks the factual sufficiency of the
evidence supporting his conviction in his first issue.  When reviewing the factual sufficiency of
the evidence, we review all of the evidence, but not in the light most
favorable to the prosecution. See Clewis v. State, 922 S.W.2d 126, 129
(Tex.Cr.App.1996).  We reverse only
if:  (1) the evidence in support of the
verdict, considered as standing alone, is factually too weak to support it; or
(2) the verdict is so contrary to the overwhelming weight of the evidence as to
be clearly wrong and unjust.  Goodman v.
State, 66 S.W.3d 283, 285-86 (Tex.Cr.App.2001); Johnson v. State, 23 S.W.3d 1,
7 (Tex.Cr.App.2000).  A decision is not
clearly wrong and unjust merely because the fact finder resolved conflicting
evidence in favor of the State. Cain v. State, 958 S.W.2d 404, 408 (Tex.Cr.App.1997).     

The record
reveals that appellant and the victim were very close friends.  They were also members of a group known as
the ARolling 60s Crypts.@ 
Appellant, the victim, and three other members of the Rolling 60s Crypts
(Michael Vasquez, Nicholas Powell, and Justin White) traveled to the home of
Anthony Smith in the early morning hours of March 4, 2001.  Smith had previously Aembarrassed@ Vasquez by pulling a gun on him. 
Powell testified that the five men went to Smith=s house because Vasquez wanted to kill
Smith.  Appellant=s statement to the police confirmed this
fact.  Vasquez was armed with a pistol,
and appellant was armed with an assault rifle. 









The group
parked their vehicles out of sight near Smith=s home.  They remained outside
of the home and waited for Smith to return. 
Smith testified that, when he returned home, he saw the men standing in
his yard.  Smith yelled out from the car
in which he was riding, AWho the f_ _k is that in my yard?@  Someone in the group responded
by yelling, AWho the f_ _k are you?@ 
Smith replied, AI live
there.@ 
Smith testified that someone yelled A[t]here he is, dump on him@ and then a barrage of gunfire erupted.  Smith returned fire with a pistol he had in his possession.  Appellant admitted in his statement to the
police to firing an assault rifle at Smith=s vehicle.  Appellant argued at
trial that Smith fired first and that he only returned fire in
self-defense.  

Appellant
fired the assault rifle at least 20 times during the battle.  Sometime during the melee, a bullet struck
the victim in the lower abdomen.  The
bullet severed the iliac vein of the victim=s right leg which ultimately caused him to bleed to death.  When they arrived at the scene, the police
discovered the victim=s body
lying in the street.  Appellant was
taken into custody after a neighbor reported someone hiding in their
backyard.  The assault rifle which
appellant used in the battle was located later that morning approximately 30
feet from where appellant was arrested. 


Detective
John Reid of the Abilene Police Department testified that he recovered a fired
bullet located near a blood stain at the location where the victim=s body was found.  Richard Ernest, a forensic firearm examiner, testified that this
bullet was fired from the assault rifle which appellant used during the
altercation.  Under microscopic
examination, Ernest detected the presence of body tissue on the bullet.  Carolyn Van Winkle, a DNA analyst, testified
that the victim=s DNA profile was consistent with the DNA
profile of the tissue found on the bullet. 
Dr. Marc Andrew Krouse of the Tarrant County Medical Examiner=s Office performed an  autopsy on the victim.  He testified that the victim=s gunshot wound was caused by a rifle rather
than a pistol.  








The jury
convicted appellant of intentionally or knowingly causing the death of the
victim.[1]  Appellant argues that the evidence
supporting the verdict is insufficient because there was no evidence of any
animosity between appellant and the victim. 
Appellant=s reliance on this contention in this regard
is misplaced for two reasons.  First,
appellant=s argument ignores the theory of Atransferred intent@ as set out in TEX. PENAL CODE ANN. ' 6.04(b)(2) (Vernon 1994):

A person is nevertheless criminally
responsible for causing a result if the only difference between what actually
occurred and what he desired, contemplated, or risked is that...a different
person or property was injured, harmed, or otherwise affected.

 

The statutory principle
of Atransferred intent@ is raised when there is evidence that a
defendant with the required culpable mental state intends to injure or harm a
specific person but injures or harms a different person or both.  See Manrique v. State, 994 S.W.2d 640, 647
(Tex.Cr.App.1999).  The evidence of
appellant=s intent to kill Smith was, therefore,
sufficient to support the jury=s finding that appellant intentionally caused the death of the
victim.  The fact that the court=s charge did not reference Atransferred intent@ is of no consequence because we are to
assess the sufficiency of the evidence under a hypothetically correct jury
charge.  Manrique v. State, supra at
648; Malik v. State, 953 S.W.2d 234 (Tex.Cr.App.1997).  

Additionally,
the lack of evidence showing animosity between appellant and the victim does
not affect the Aknowingly@ finding made by the jury.  TEX.
PENAL CODE ANN. ' 6.03(b) (Vernon 1994) provides in relevant
part:  AA person acts knowingly, or with knowledge, with respect to a result of
his conduct when he is aware that his conduct is reasonably certain to cause
the result.@  As
noted by Judge McCormick in Manrique, firing numerous shots from an
assault rifle during a gunfight is sufficient to establish that a defendant was
aware that his conduct was reasonably certain to cause death. Manrique v.
State, supra at 647; see Hull v. State, 871 S.W.2d 786, 789 (Tex.App. B Houston [14th Dist.] 1994, pet=n ref=d).  The evidence in support of
the jury=s verdict is, therefore, not too weak to
factually support it.  While there is
some evidence that Smith fired first at appellant=s group, several witnesses disputed this assertion.   The contrary evidence is not so
overwhelming as to render the jury=s verdict clearly wrong and unjust. 
Appellant=s first issue is overruled.








Appellant
argues in his second issue that the trial court erred in admitting printouts
generated by DNA testing equipment.  As
a part of Van Winkle=s DNA
comparison testimony, the State offered into evidence machine-generated
printouts which graphically displayed the DNA profiles of evidentiary items
involved in the case.  Relying on DWI
cases involving the admission of breathalyzer and intoxilyzer results,
appellant argues that the printouts were inadmissible because Van Winkle was
not a technician who serviced the machines which generated the reports.[2]


The trial
court=s decision to admit scientific evidence is
reviewed under an abuse of discretion standard.  See Griffith v. State, 983 S.W.2d 282, 287 (Tex.Cr.App.1998), cert.
den=d, 582 U.S. 1986 (1999).  Van
Winkle testified that she worked in the DNA section of the Tarrant County Crime
Laboratory.  She had a master of science
degree in molecular biology and had received extensive training in forensic DNA
testing.  She set up the DNA laboratory
in Dallas County and implemented the latest version of DNA testing in Tarrant
County.  She had testified as a DNA
expert over 100 times and had lectured frequently about DNA analysis.  

Van Winkle
testified that quality control procedures are implemented at every step in the
process in her laboratory to assess that each step is done properly.  Each DNA analyst undergoes proficiency
testing at least twice a year.  Van
Winkle established the quality control measures for her laboratory.  She has also audited the quality control
measures of other laboratories.  She
testified that company technicians serviced the instruments in her laboratory
whenever there is a problem with the instruments.  Given Van Winkle=s expertise as a DNA analyst and her testimony regarding the quality
control measures followed in her laboratory, the trial court did not abuse its
discretion in permitting the admission of the DNA printouts.  Appellant=s second issue is overruled.  

The
judgment of the trial court is affirmed.

 

JIM
R. WRIGHT

JUSTICE                     

 

September 26, 2002

Do not publish.  See TEX.R.APP.P. 47.3(b).

Panel consists of: Arnot, C.J., and

Wright, J., and McCall, J.











     [1]The indictment charged appellant with murder in three
paragraphs which tracked two subsections of TEX. PENAL CODE ANN. '19.02 (Vernon 1994). 
The first paragraph asserted that appellant intentionally and knowingly
caused the death of the victim pursuant to Section 19.02(b)(1).  The second and third paragraphs asserted
that appellant committed an act clearly dangerous to human life that caused the
death of the victim while in the course of committing a felony pursuant to
Section 19.02(b)(2).  The jury=s verdict form had separate Aguilty blanks@ for
each of the three paragraphs which charged appellant with murder as opposed to
a general verdict.  See Aguirre v. State,
732 S.W.2d 320 (Tex.Cr.App.1987).  The
three Aguilty blanks@ for
the offense of murder  were submitted to
the jury disjunctively.   Pursuant to
the format of the verdict form, the jury only entered a finding of guilt with
respect to the allegation that appellant intentionally and knowingly caused the
death of the victim.





     [2]Appellant did not object to Van Winkle=s subsequent oral testimony wherein she stated that the
DNA profile of the tissue found on the bullet was consistent with the victim=s DNA profile.