

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1054-07

### SHELDON ROBERTS, Appellant

### v.

### THE STATE OF TEXAS

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SIXTH COURT OF APPEALS
### DALLAS COUNTY

JOHNSON, J., delivered the opinion of the Court in which MEYERS, PRICE, WOMACK, HOLCOMB and COCHRAN, JJ., joined. PRICE, J., filed a concurring opinion in which WOMACK, J., joined. KELLER, P.J., filed a dissenting opinion. HERVEY, J., filed a dissenting opinion in which KELLER, P.J., and KEASLER, J., joined.

## O P I N I O N

Appellant was charged with capital murder by two separate indictments, one alleging the death of a pregnant woman and her embryo and the other alleging the deaths of more than one person. A jury convicted appellant of capital murder under both indictments. Because the state did not seek the death penalty, appellant's sentences were assessed at life imprisonment.[1] Appellant

---

[1] In a joint trial, appellant's co-defendant, Brandon Okeith Shaw, was also convicted of capital murder and sentenced to life imprisonment. *Shaw v. State*, No. 11-05-00265-CR and 11-05-00266-CR, 2007 Tex. App. LEXIS 3966 (Tex. App.–Eastland, delivered May 24, 2007, no pet. filed)(not designated for publication). Another co-defendant, Emmanuel Dornail Rogers, was tried separately and was also convicted of these murders and sentenced to

appealed both convictions, and the court of appeals affirmed each with a separate opinion. Appellant sought discretionary review of both decisions of the court of appeals, but we granted review of only the appeal of the conviction for killing a pregnant woman and her embryo. We reform the judgment to reflect a conviction for the murder of Virginia Ramirez and remand to the trial court for sentencing on that charge.

FACTS

Around midnight on December 19, 2003, multiple assailants invaded a Dallas apartment, firing numerous rounds of gunfire inside and killing three of the occupants of the apartment: Heath Laury, a resident, Jennifer Thompson, a visitor and Laury's girlfriend, in the south bedroom and, in the north bedroom, Virginia Ramirez, a resident who was in the early stages of pregnancy. When the shooting had ended, Ramirez's two-year-old daughter was also in the north bedroom. Royale Bolden, a resident of the apartment and the father of the two-year-old, testified that he and a visitor, Corey Smith, hid in the closet in the north bedroom and escaped harm. Another visitor escaped by jumping out of the window in the south bedroom.

Ms. Ramirez's mother, Elsa Moncayo, testified that her daughter had lived in the apartment with her two children from March of 2003 until her death in December of that year.[2] Emmanuel Rogers, a co-defendant, gave a written statement in which he indicated that the attackers knew the residents of the apartment, and he described a confrontation earlier in the evening at the apartment

---

life imprisonment. *Rogers v. State*, No. 05-05-00283-CR and No. 05-05-00284-CR, 2006 Tex. App. LEXIS 1609 (Tex. App.–Dallas, delivered March 1, 2006, no pet. filed)(not designated for publication).

[2] Ms. Ramirez's two-year-old daughter was present at the time of the attack. Her seven-year-old son was spending the night with his grandmother, Ms. Moncayo. At the time of the trial, Ms. Ramirez's children were living with Ms. Moncayo.

"where the Mexican girl and Heat[3] stayed," during which "the Mexican girl tried to fight" Brandon Shaw, a co-defendant in the murders.[4] Detective James Vineyard testified that examination of the north bedroom door showed 4 holes made by bullets, each entering the door at different angles.[5] Detective Vineyard stated that the differing angles of impact indicated that either the door was being closed when the shots were fired or that the door was stationary and the shooter was moving. He also stated, "The position of the body and transferred blood [on the wall behind the door] and in relationship to the door would indicate that she was obviously behind the door. Indication is that she probably was trying to close the door and was turning toward the wall or the inside of the bedroom as she was shot."

The indictment alleged that appellant had intentionally and knowingly caused the death of Ms. Ramirez by shooting her with a firearm, a deadly weapon, and during the same criminal transaction had intentionally and knowingly caused the death of "another individual, to-wit: an unborn child of Virginia Ramirez by shooting Virginia Ramirez while said unborn child was in gestation of said Virginia Ramirez." The jury found appellant guilty of capital murder as alleged in the indictment.

On appeal, appellant raised several points of error including claims that: 1) the evidence was legally and factually insufficient to sustain the conviction; and 2) the trial court erred by submitting

---

[3] Heath Laury was known as "Heat," or "Lil Heat." Testimony from a survivor revealed that Shaw's brother, "Fifty," had been shot and Shaw believed that "Heat" was involved in the shooting.

[4] Royale Bolden testified that Shaw and others had barged into the apartment around sundown and had confronted Heat about what he knew about Fifty's shooting. Heat denied knowledge, and Ms. Ramirez had screamed at Shaw and the others to get out of her house.

[5] A fifth hole was made by a shotgun. No trajectory could be established from that hole. All of Ramirez's injuries were caused by .40 or .45 caliber bullets.

an erroneous jury charge that failed to require a culpable mental state for the death of the unborn child, thereby causing egregious harm. The court of appeals overruled both issues and affirmed the trial court's judgment. *Roberts v. State*, No. 06-05-00165-CR, 2007 Tex. App. LEXIS 4605 (Tex. App.– Texarkana, delivered June 14, 2007)(not designated for publication).

We granted two of appellant's grounds for review, which assert that the court of appeals erred

(1) by holding that the evidence was both legally and factually sufficient to support the jury's verdict;
(2) in holding that the charge did not contain a material variance or lack a required culpable mental state.

In his brief, appellant "rephrases the issues" and questions the sufficiency of the evidence to establish his participation in a capital murder when the state relied upon testimony from two witnesses who were his accomplices in another murder and whose testimony did little more than place him at the scene of the shooting and establish his friendship with one of the shooters. He asserts that, because the evidence merely established his presence at the location of the offense and his friendship with one of the shooters, the evidence was insufficient to support the conviction.

Appellant also questions whether proof that he killed a pregnant woman and her embryo in the same transaction established capital murder when he was unaware of the pregnancy. He notes that the state's medical expert testified that it was impossible for someone to look at Ms. Ramirez's outward appearance at the time of her death and be able to tell that she was pregnant. He argues that, because it was impossible for him to know that she was pregnant, he lacked the specific intent to kill her embryo, which is an element of capital murder as alleged in the indictment.

SUFFICIENCY OF THE EVIDENCE

The state asserts that this court lacks jurisdiction to review appellant's complaint that the

evidence does not sufficiently corroborate the testimony of the two witnesses because that claim was never raised in the court of appeals. Alternatively, it argues that the corroboration requirement for accomplice-witness testimony does not apply because these two witnesses were not accomplices in the case being tried, but rather were accomplices in an unrelated murder case.

The court of appeals observed in its opinion that there was a portion of appellant's brief on direct appeal that could be read as raising the issue that accomplice testimony must be corroborated by non-accomplice testimony. *Roberts v. State*, *supra* at * 23-24, n.9. It concluded, however, that if appellant intended to raise such issue, he had failed to provide any substantive analysis of corroboration issues and that, because his brief contained no analysis of the sufficiency of the state's evidence to corroborate accomplice-witness testimony, "any such issues would have been inadequately briefed and would be properly overruled." *Id*.

Appellant did not raise, nor did we grant review of, a ground complaining about the testimony of the two named witnesses (Nero and Jackson) who had been co-defendants with appellant in regard to a different murder. We observe that appellant's brief on direct appeal includes a discussion of the testimony of these two witnesses, Nero and Jackson, as simply providing evidence of appellant's mere presence at the scene of the crime, which was not enough to prove guilt. But it made no mention of any challenge to the testimony provided by those two witnesses because of any insufficiency of evidence to corroborate their testimony, nor did it make any argument that corroboration was required. We agree with the court of appeals that, if appellant had been attempting to raise such a complaint about uncorroborated accomplice-witness testimony, it was inadequately briefed and could properly be overruled. Because appellant did not present to the court of appeals his claims about the accomplice-witness rule's applicability to the testimony of these two

witnesses and the court of appeals consequently did not rule on that issue, we decline to address that component of appellant's first ground for review. "This Court reviews only 'decisions' of the courts of appeals; we do not reach the merits of any party's contention when it has not been addressed by the lower appellate court." *Sotelo v. State*, 913 S.W.2d 507, 509 (1995).

Appellant also argues that, considering all of the evidence (including the testimony of Nero and Jackson), in the requisite light of "most favorable to the verdict," the evidence is legally insufficient to support the conviction. He asserts that the bullets, even if attributed to him, were not connected to any of the weapons actually used in the offense. He adds that his mere possession of a rifle which was the same type as a rifle used in the offense is not evidence that he was involved in the offense. He also notes that, according to Nero and Jackson, he had denied participating in the shooting and claimed not to have even entered the apartment in which the shooting had taken place.

"In assessing the legal sufficiency of the evidence to support a criminal conviction, we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Hooper v. State*, 214 S.W.3d 9, 13 (2007), *citing Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). In addressing a claim of factual insufficiency of the evidence, we review all of the evidence in a neutral light. *Roberts v. State*, 220 S.W.3d 521, 524 (Tex. Crim. App.), *cert. denied*, 128 S.Ct. 282 (2007); *Garza v. State*, 213 S.W.3d 338, 344 (Tex. Crim. App. 2007).

The court of appeals considered the testimony of thirteen witnesses. *Roberts*, *supra* at ** 12-23. It determined that there was evidence to show, at a minimum, that appellant was with the men who did the shooting, that he helped the shooters break into the apartment, and that he helped

conceal and destroy evidence after the fact. *Id*. at * 23. It concluded that there was enough direct and circumstantial evidence so that the jury could, at a minimum, link appellant to the commission of these murders as a party. *Id*.

After reviewing the record, we hold that the court of appeals did not err in overruling appellant's general challenges to the legal and factual sufficiency of the evidence. Accordingly, we overrule ground one.

## CULPABLE MENTAL STATE

Ground two challenges the court of appeals' holding regarding appellant's claim that the jury charge contained a material variance or lacked a required culpable mental state. As noted above, upon briefing appellant "rephrases the issues." "Issue Number Two" of appellant's brief now states, "Whether proof that Appellant killed a pregnant woman and her embryo in the same transaction established capital murder when Appellant was unaware of the pregnancy." Appellant points out that the indictment charged him with killing a pregnant woman with specific intent to kill her embryo in the same transaction. He argues that "[b]ecause specific intent is required to kill the embryo, above and beyond intent to kill the embryo's mother, the 'doctrine of transferred intent' cannot be used to re-assign a defendant's intent to kill an embryo's mother to her embryo."

Alternatively, appellant argues that the court of appeals erred when it failed to find egregious harm from the lack of an instruction in the jury charge that required the jury to find that he specifically intended to kill the embryo. He asserts that "[t]he error is egregious because the charge omitted the capital element; there is no suggestion in the definitional portions of the jury charge or

application paragraph that the State must prove Appellant's specific intent to kill [the] embryo."[6]

The court of appeals acknowledged, and appellant and the state agree, that there is no evidence in the record that appellant or anyone else knew that Ms. Ramirez was pregnant at the time of her death. *Roberts*, *supra* at * 26. The evidence showed that Ms. Ramirez was in the early stages of pregnancy. The state's medical expert explained that the pregnancy would have been impossible to perceive from mere observation of Ms. Ramirez; "You couldn't tell just by looking at her . . . that she was pregnant."[7] The state asserts that the evidence is legally sufficient to show that appellant possessed intent or knowledge with respect to the embryo because, at the time she was shot, the mother cried out, "Not my baby, not my baby," through the closed door. The state also argues that the trial court properly charged the jury on the doctrine of transferred intent, and that applying that doctrine to the unintended victim in a multiple murder gives proper effect to the legislature's intent to increase the offense to capital murder when two or more victims are killed.

We observe that appellant's brief in the court of appeals included claims that the evidence was legally and factually insufficient to sustain the conviction because of a material variance between the indictment and the proof, and that the trial court erred by submitting an erroneous jury charge that failed to require a culpable mental state for the death of an unborn child, thereby causing

---

[6] The application paragraph states as follows:

Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt, that on or about December 19, 2003, in Dallas County, Texas, the defendant, acting alone or as a party as defined herein, intentionally or knowingly caused the death of Virginia Ramirez, an individual, by shooting Virginia Ramirez with a firearm, a deadly weapon, and during the same criminal transaction, while desiring or contemplating the death of Virginia Ramirez, did cause the death of Virginia Ramirez's unborn child, an individual, while said unborn child was in gestation of said Virginia Ramirez, you will find the defendant guilty of the offense of capital murder and so say by your verdict.

[7] At the time of her death, Ms. Ramirez was 5'3" tall and weighed 229 pounds. The medical examiner estimated that she was 8-9 weeks pregnant.

egregious harm to appellant. The jury charge included, without objection, language from TEX. PENAL CODE § 6.04(b)(2) stating that "[a] person is nevertheless criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contemplated or risked is that a different person was injured, harmed, or otherwise affected."

Appellant correctly asserts that the killing of the second person must be "intentional or knowing." The statutory definitions of intentional or knowing culpability with respect to the result of conduct, as correctly reflected in the jury charge, require the defendant to have the conscious objective or desire to cause the result, or to be aware that his conduct is reasonably certain to cause the result.

In *Lawrence v. State*, 240 S.W.3d 912, 914-15 (Tex. Crim. App. 2007), *cert. denied*, 128 S.Ct. 2056 (2008), the defendant was accused of killing an embryo by fatally shooting the embryo's mother, a woman he had been dating. The defendant was two-timing the mother, and upon learning that the mother was pregnant by him, he told the second girlfriend that he would "take care of" the problem, i.e., the pregnancy. The evidence reflected that the defendant killed the mother with the knowledge that she was pregnant and with the specific intent to kill the embryo. We held, based upon the relevant Penal Code statutes, that a person who "intentionally or knowingly" causes the death of a woman and "intentionally or knowingly" causes the death of her unborn child, at any stage of gestation, commits capital murder, and that the plain language of the statutes prohibits the "intentional or knowing" killing of any unborn human, regardless of age. *Id*. at 915.

The state argues that, when measured against a hypothetically correct jury charge, the evidence is legally sufficient to prove appellant's intent or knowledge with respect to the unborn child. It specifically argues that testimony that the pregnant victim exclaimed, "Not my baby, not

my baby," while seeking shelter behind a closed door, provided sufficient evidence by which a reasonable juror could conclude that the shooters knew they were shooting at a pregnant woman and her unborn baby on the other side of the door.

"Murder is a 'result of conduct' offense, which requires that the culpable mental state relate to the result of the conduct, i.e., the causing of the death." *Schroeder v. State*, 123 S.W.3d 398, 400 (Tex. Crim. App. 2003), *citing Cook v. State*, 884 S.W.2d 485, 491 (Tex. Crim. App. 1994). In this case, a witness testified that, while he was in a closet hiding from the assailants, he heard Ms. Ramirez scream, "Not my baby. Not my baby," right before she was shot through the bedroom door. But his testimony also established that Ms. Ramirez's two-year-old daughter was with her at the time she was shot. Coming out of the closet after the shooting ended, the witness found Ms. Ramirez with the two-year-old "[o]n her stomach, on her chest"; thus, it is reasonable to infer that the "my baby" to whom the pregnant victim was referring during the shooting was the two-year-old rather than the embryo.

In the instant indictment, appellant was charged with capital murder by causing the death of two individuals, Ms. Ramirez and her unborn child while in gestation, during the same criminal transaction. Capital murder is a result-of-conduct oriented offense; the crime is defined in terms of one's objective to produce, or a substantial certainty of producing, a specified result, i.e. the death of the named decedent. *Kinnamon v. State*, 791 S.W.2d 84, 88-89 (1990), *overruled on other grounds*, *Cook v. State*, 884 S.W.2d 485, 491 (Tex. Crim. App. 1994). Due process requires the prosecution to prove beyond a reasonable doubt every fact necessary to constitute the offense alleged. *In re Winship*, 397 U.S. 358, 364 (1970). In this case, the state alleged that appellant intentionally and knowingly caused the death of Ms. Ramirez's unborn child; thus the state was

required to prove beyond a reasonable doubt that appellant possessed that culpable mental state with respect to the death of the unborn child, regardless of any intent to kill Ms. Ramirez.

The state argues that transferred intent applies as to the death of the embryo under the precedent of *Norris v. State*, 902 S.W.2d 428 (Tex. Crim. App. 1995). Norris broke into his girlfriend's bedroom through the window and killed her and her two-year-old son (the baby) with multiple shots from a rifle. The baby suffered five gunshot wounds and died instantly. The mother suffered three gunshot wounds and numerous wounds from fragments of bullets that first hit the baby; she died later that night in a hospital. The medical examiner testified, in response to the state's hypothetical, that their wounds were consistent with a bullet fired through the bedroom window that wounded the baby's leg, then fragmented and wounded the mother; thereafter, the mother picked up the wounded baby and held it to her chest, and additional bullets injured one or both of the victims.

The testimony supported the state's theory that Norris shot and wounded the baby from outside, climbed through the broken window, fired again and struck the baby in the forehead, with fragments injuring the mother's face and neck, left the bedroom for a period of time, then returned, fired additional bullets into the victims, then left the apartment in full view of the mother's older sons. The issue of transferred intent was raised only by Norris's own testimony, in which he asserted that he intended to kill only the mother.

The jury charge permitted the jury to find Norris guilty of capital murder "if it found appellant intentionally caused the death of the mother by shooting her with a firearm and during the same criminal transaction either intentionally caused the death of the baby by shooting him with a firearm, *or intended to cause the death of the mother by shooting her with a firearm, and caused the death of the baby by shooting him with a firearm and the only difference between what actually*

*occurred and what he desired, contemplated, or risked is that a different person or property was*

*injured.*" *Norris*, 902 S.W.2d at 436 (italics in original).

On appeal, Norris asserted that the evidence was insufficient to prove that he specifically intended to cause the death of the baby. The Court found that the jury could have rationally found specific intent; the baby "was in full view of appellant, and appellant admitted seeing him." *Id*.

Norris also asserted that a portion of the jury instruction (in italics above) permitted the jury to convict him under the impermissible application of transferred intent, as set out in TEX. PENAL CODE § 6.04(b)(2). The state argued that "there was no danger the jury convicted appellant of capital murder based on the transferred intent instruction because the jury found at the punishment phase in special issue one that 'appellant deliberately caused the death' of the baby." The jury instruction on the first special issue asked whether Norris caused the death of the baby deliberately and with the reasonable expectation that the death of the baby *or another* would result. *Id*. at 437.

The *Norris* Court acknowledged that capital murder pursuant TEX. PENAL CODE § 19.03(a)(6)(A) requires two or more intentional or knowing murders. Its analysis of the application of § 6.04(b)(2) to § 19.03(a)(6)(A) is one short paragraph.

> The plain language of Section 6.04(b)(2) evinces a legislative policy to make a defendant, who, like appellant, acts with the specific intent to kill, criminally responsible for the consequences of his voluntary acts. And, this Court has held Section 6.04(b)(2) can be applied to establish a Section 19.02(a)(1) murder. *See Aguirre v. State*, 732 S.W.2d 320, 326 (Tex. Crim. App. 1982)(op. on reh'g). Therefore, since Section 19.03(a)(6)(A)[8] incorporates two or more Section 19.02 (a)(1) murders and Section 6.04(b)(2) can be used to establish a Section 19.02(a)(1)[9] murder, and in light of the legislative policy underlying Section 6.04(b)(2) and the statutory first special issue, we hold Section 6.04(a)(2) applies to a Section

---

[8] Now § 19.03(a)(7)(A).

[9] Now § 19.02(b)(1).

19.03(a)(6)(A) capital murder prosecution.

*Id.* at 437-38.

This conclusion is at odds with the *Norris* Court's recognition that, for capital murder pursuant to Section 19.03(a)(6)(A), each death must be intentional or knowing–there must be a discrete "specific intent to kill" as to each death. A classic example of proper application of transferred intent is the act of firing at an intended victim while that person is in a group of other persons. If the intended person is killed, the offense is murder. If a different person in the group is killed, the offense is murder pursuant to TEX. PENAL CODE § 6.04(b)(2): "A person is nevertheless criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contemplated, or risked is that: a *different* person or property was injured, harmed, or otherwise affected." (Emphasis added.) In either case, there was one intent to kill and one resulting death.

If both persons are killed, we cannot use transferred intent to charge capital murder based on the death of the unintended victim, as that would require using a single intent to kill to support the requirement of two intentional and knowing deaths. Further, while § 6.04 permits the use of transferred intent if a *different* person in harmed;[10] such use is not authorized if the intended victim is also killed, as that would permit one intent to kill to support more than one death.[11] This is the

---

[10] Had Ms. Ramirez's two-year-old daughter died during the course of this attack instead of her mother, appellant would have been criminally responsible for her death pursuant to the application of the doctrine of transferred intent through § 19.02(b)(2, 3). He would also be vulnerable to a separate charge of capital murder for causing the death of a child under the age of six years. TEX. PENAL CODE § 19.03(a)(8).

[11] The second death could be charged as murder pursuant to §19.02(b)(2) (intends to cause serious bodily injury and commits an act clearly dangerous to human life) or §19.02(b)(3) (commits or attempts to commit a felony, other than manslaughter, and in the course of . . . the commission or attempt, commits an act clearly dangerous to human life), but not as murder pursuant to § 19.02(b)(1), because that section requires a separate and specific intent to kill. It therefore cannot be used support *capital* murder, which requires a intentional and knowing murder for each

fallacy of *Norris*; it permits the intent to cause one intentional or knowing death to support two deaths, one intentional and knowing, the other unintentional. We overrule *Norris* to the extent that it allows such use. Transferred intent may be used as to a second death to support a charge of capital murder that alleges the deaths of more than one individual during the same criminal transaction only if there is proof of intent to kill the same number of persons who actually died, e.g., with intent to kill both Joe and Bob, the defendant killed Joe and Lou. It may also be used if, intending to kill both Joe and Bob and being a bad shot, the defendant killed Mary and Jane. This resolution comports with *Aguirre v. State*, 732 S.W.2d 320 (Tex. Crim. App. 1982), but does not violate the plain language of § 6.04(b)(2) or § 19.03(a)(7).

But that is not the case here. Appellant intended to kill A, and did so. If he is to be charged with also intentionally and knowingly killing a second person, in this case the embryo, by killing the mother, there must be a separate specific intent to do so. *See Lawrence, supra* (shot pregnant girlfriend with specific intent to kill the embryo). It is undisputed that appellant did not know that Ms. Ramirez was pregnant. Lacking knowledge of the embryo's existence, appellant could not form a separate specific intent to kill the embryo, as is required by statute.[12]

Nor can we say that intent to kill the two-year-old, even if such an intent had been proved, could transfer to the embryo under these facts.[13] Transferred intent in this context is based on the

victim.

[12] Appellant was, however, vulnerable to a charge of murder for his intent to kill Ms. Ramirez and a charge of capital murder for the death of Ms. Ramirez in the course of the murders of the other occupants of the apartment or of the burglary of the apartment.

[13] Based on the evidence, the attackers knew the residents of the apartment and would have been aware that two children lived there. The two-year-old was in the bedroom with her mother and was unharmed, even though she was a known, easy, and available target.

principle that an act intended to kill one person instead killed another. If, with intent to kill the two-year-old, appellant had fired a bullet that entered Ms. Ramirez's uterus and killed the embryo, transferred intent may lie. But that is not the case here. The embryo was not viable outside of a living uterus and died because its mother died. No act of appellant toward the two-year-old resulted in the death of the embryo.

We cannot conclude that there was sufficient evidence of the constitutionally required proof beyond a reasonable doubt that appellant intentionally and knowingly caused the death of Ms. Ramirez's unborn child. We sustain appellant's ground two.

We reverse the judgment of the court of appeals and reform the judgment to reflect a conviction for the murder of Virginia Ramirez and remand to the trial court for assessment of punishment for that murder conviction.[14]

Delivered: December 17, 2008
Publish

---

[14] We did not grant review of appellant's conviction and life sentence for capital murder in the companion case, and that judgment remains undisturbed. *See* footnote 1, *supra*.