Affirmed and Memorandum Opinion
filed March 22, 2011.

 

In
The

Fourteenth
Court of Appeals



NO. 14-10-00389-CR



Michael Wayne
Walker, Appellant 

v.

The State of
Texas, Appellee 



On Appeal from
the 174th District Court

Harris County, Texas

Trial Court
Cause No. 1183988



 

MEMORANDUM OPINION 

Appellant Michael Wayne Walker appeals his conviction
for murder and sentence of sixty years’ incarceration.  In four issues,
appellant claims the evidence is legally and factually insufficient to support
his conviction, the trial court erred in instructing the jury on the doctrine
of transferred intent, and the trial court erred by overruling his objections
to the prosecutor’s jury argument.  We affirm.

Background

Appellant’s indictment arose from a September 2008
shooting at the Pines of Westbury apartment complex.  Complainant Lester Washington
lived in apartment no. 398 and was killed by a bullet shot through the window
of that apartment.  Living with him in apartment no. 398 at the time were Washington’s
fiancé Gerlinde Hamilton and her two boys, ages six and eight.  Hamilton’s
older son Gerald Moses lived nearby and visited frequently.  Pricilla Powell
and her young sons occupied apartment no. 396.  At the same time, the Lewis
family was staying in apartment no. 396 with the Powells because their
electricity was out due to Hurricane Ike.   

On the afternoon of September 16, 2008, a group of
children, including the Hamilton, Powell, and Lewis children, and some teens
were playing football in the courtyard of the Pines of Westbury apartment
complex.  At some point mid-afternoon, witnesses described the approach of some
other teens who attempted to take the football from the kids in the group,
including Powell’s son.  

Powell came out and asked the teenagers, “What’s your
problem with my son?  Why are you messing with him?”  One of the kids punched
her in the face, and her glasses were knocked-off.  Powell’s son began fighting
with one of the teenagers over the football.  Powell’s husband told them that
they should not be fighting over a football, and one of the boys pushed him. 
At this point, a brawl broke out in the courtyard.  Hamilton called 911.  After
five minutes, the teenagers “broke out and retreated.”  

Witnesses at trial describe the events that
transpired after the brawl establishing a plot for revenge over the fight.  Damien
Jordan, appellant’s friend, learned that Travione “Woody” Pratt had been in the
fight.  Woody later also told him that he had been “in a fight with these New
Orleans boys.”  Woody wanted revenge against the “New Orleans boys.”  Jeremy
Williams, who lived at the apartment complex with his grandmother, heard that
his female cousin had been hit in the nose by a boy during the brawl, and he wanted
revenge for his cousin.  

Dana Wilson, who lived at the apartment complex, observed
a group of males walking toward the apartment complex as she was coming home.  Appellant
was with the group and was carrying a liquor bottle.  Wilson heard someone in
the group say, “He jumped on my friend . . . we’re going to get those
niggers.”  Appellant said, “We fixing to go fight.”  

A group of several males that included appellant,
Jordan, Woody, and Williams congregated on a stairway near apartment no. 398 where
they discussed that they “were going to do something to the New Orleans boys that
Woodie got in a fight with.” Woody pointed to a window where he believed the
New Orleans boys were staying.  Jordan corrected Woody and said, “No . . . the
New Orleans boys don’t stay there.”  

The men initially planned to knock on the door and
fight the boys.  Appellant, who was holding a .22 caliber Ruger pistol, said,
“I’ve got a gun, let’s bust through it.”  No one else in the group had a gun. 
Jordan said, “Give me the gun, I do it,” but another member of the group, Dalleon
Washington, told Jordan not “to do it.”  Appellant told everyone “to take their
positions.”  Jordan turned his back, walked away, and then heard gunshots.  Williams
testified that he turned around and saw appellant’s “hand pointed at the
window.”  Williams also told the police that he saw appellant shooting at the
window.  Woody testified that he saw appellant’s body falling back as if he
were shooting.  Woody also told the police that he saw appellant shooting into
the window.  The group ran when appellant started shooting.  

A few members of the group, including appellant, ran
to an apartment where Larrielle Morris lived.  Appellant told Morris, “You’ve
got to let me in because the police are looking for us.”  The group was in
Morris’s bedroom with Morris and Charraine Griffin, who was staying there.  Appellant
put his gun under one of the beds and then pulled it out and reloaded it.  The
group stayed about ten to twenty minutes.  As the group was leaving, one of the
members of the group said, “We’re fixing to leave to shoot it up again.”  

Hamilton was visiting a friend in another apartment. 
Consequently, she was not inside her apartment during the shooting.  When she
heard the gunshots, she went toward her apartment.  One of the neighbors was in
the hallway and told Hamilton that she “needed to hurry up and get to [her]
apartment because it was [her] apartment that they shot.”  Hamilton found
Washington lying on the floor of their apartment.  Washington said, “I’ve been
shot.  Get my kids out of here.”  Hamilton saw that Washington had been shot in
the chest and called 911.  

In the meantime, Chad Lewis had left the apartment
complex with Powell to go to his house to retrieve some things and to go to the
store so that Powell could buy cigarettes.  They returned shortly after Lewis
realized that he had forgotten his house keys.  As Lewis and Powell were entering
the apartment complex, they saw appellant and another male running in the
parking lot.  Lewis and Powell heard appellant say, “I got him.”  Lewis
recognized appellant because he had previously seen him after the brawl.

When Lewis and Powell reached the apartment, a family
friend told them to get out of the car and to “[g]et in the house.  They’re
shooting at us.”  When Lewis was inside the apartment, he heard gunshots.  The
shooting lasted ten minutes.  Lewis heard “the lady next door holler for help.” 
Lewis was able to crawl to apartment no. 398 without going outside.  He pushed
open the door and saw Washington slumped over in a recliner.  More shots were
being fired into the apartment.  According to Lewis, every time someone touched
the blinds, another shot was fired.  

Bob Conley of the Houston Police Department was
dispatched to the apartment complex at 8:50 p.m.  Conley saw Washington lying
on the floor.  Washington had blood coming from his mouth, was nonresponsive,
and died later at the hospital from his gunshot wounds.  Medical personnel
recovered two .22 caliber bullets from Washington’s body.  There were five
bullet holes in the living room window of apartment no. 298.  A bullet fragment
was recovered from a stud in one wall.  There was a bullet hole in the back of
the television.  

The State charged appellant with murder: (1)
intentionally and knowingly causing the death of Washington by shooting him
with a deadly weapon, namely, a firearm, and (2) intending to cause serious
bodily injury to Washington and causing the death of Washington by
intentionally and knowingly committing an act clearly dangerous to human life
by shooting Washington with a dangerous weapon, namely, a firearm.  The court’s
charge included an instruction on transferred intent.  The jury found appellant
guilty of murder and assessed punishment at sixty years in prison.  On appeal,
appellant contends the evidence is legally and factually insufficient to
support his murder conviction, the trial court erred by instructing the jury on
the doctrine of transferred intent, and the trial court erred by overruling his
objection to the prosecutor’s misstatement of the law during closing argument. 


Sufficiency of the Evidence

In his first two issues, appellant challenges the
legal and factual sufficiency of the evidence supporting his conviction.  While
this appeal was pending, the Texas Court of Criminal Appeals held that the Jackson
v. Virginia, 443 U.S. 307 (1979), legal sufficiency standard is the only standard
to evaluate the sufficiency of the evidence in a criminal case.  Brooks v.
State, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality opinion); id.
at 926 (Cochran, J., concurring).  Accordingly, we review the sufficiency of
the evidence in this case under a rigorous and proper application of the Jackson
v. Virginia sufficiency standard.  Brooks, 323 S.W.3d at 906
(plurality opinion).

When reviewing the sufficiency of the evidence, we
view all of the evidence in the light most favorable to the verdict to
determine whether the jury was rationally justified in finding guilt beyond a
reasonable doubt.  Isassi v. State, No. PD-1347-09, — S.W.3d —, 2010 WL
3894792, at *3 (Tex. Crim. App. Oct. 6, 2010); Williams v. State, 235
S.W.3d 742, 750 (Tex. Crim. App. 2007).  We defer to the fact finder’s
responsibility to fairly resolve conflicts in the testimony, to weigh the
evidence, and to draw reasonable inferences from the facts.  Clayton v. State,
235 S.W.3d 772, 778 (Tex. Crim. App. 2007).  Our duty as a reviewing court is
to ensure that the evidence presented actually supports a conclusion that the defendant
committed the crime.  Williams, 235 S.W.3d at 750.  

Circumstantial evidence is as probative as direct
evidence in establishing the guilt of the actor, and circumstantial evidence alone
can be sufficient to establish guilt.  Hooper v. State, 214 S.W.3d 9, 13
(Tex. Crim. App. 2007).  The same standard of review is used for both
circumstantial and direct evidence.  Id.  Each fact need not point
directly and independently to the guilt of the appellant as long as the
cumulative force of all the incriminating circumstances is sufficient to
support the conviction.  Id.  

A person commits the offense of murder if he (1)
intentionally or knowingly causes the death of an individual; or (2) intends to
cause serious bodily injury and commits an act clearly dangerous to human life
that causes the death of an individual.  Tex.
Penal Code Ann. § 19.02(b)(1), (2) (West 2003).  The court’s charge
instructed the jury on the doctrine of transferred intent.  Under that
doctrine, a person is “criminally responsible for causing a result if the only
difference between what actually occurred and what he desired, contemplated, or
risked is that . . . a different person or property was injured, harmed, or
otherwise affected.”  Tex. Penal Code
Ann. § 6.04(b)(2) (West 2003).  Therefore, the jury was entitled to
convict appellant if it believed that appellant intended or knew that death or
serious bodily injury would result to an unknown person by shooting the
firearm, and that appellant missed the unknown person and instead struck
Washington, causing his death.  

Appellant claims he shot through the closed blinds of
apartment no. 398.  Therefore, appellant argues the evidence is legally
insufficient because there is no evidence that he (1) knew anyone was inside
apartment no. 398, (2) would either kill or cause bodily injury to Washington
when he shot through the window, (3) intended to kill someone else when he shot
through a window of that apartment but missed and killed Washington instead, or
(4) killed Washington because he mistakenly believed Washington was someone
else whom appellant intended to kill or to whom he intended to cause serious
bodily injury by shooting him with a firearm. 

The jury heard evidence that appellant was planning to
seek revenge on some people who were involved in a fight earlier that day—people
who were either living in apartment no. 398 or next door in apartment no. 396. 
While appellant’s group was sitting on the stairs discussing what they were
going to do, appellant was the only one with a gun.  Appellant told everyone to
take their positions.  Williams saw appellant shooting into the window.  Woody
twice told the police that appellant was shooting into the window.  Appellant
was seen reloading the gun and the group was “fixing to leave and shoot it up
again.”  Appellant was heard to say “I got him” as he ran from the scene of the
shooting.  Appellant owned a .22 Ruger, and a .22 caliber bullet was recovered
from Washington.  

Appellant asserts that everyone involved in the
incident testified that the blinds to both apartment no. 396 and apartment no.
398 were closed and it was not possible to see inside.  Jordan testified that
they did not know if it was the right window or if anyone was at home.  Williams
testified that the blinds were closed and he could not see inside the window or
tell if there were lights on inside.  Woody testified that the blinds were
closed and the windows were dark.  Woody could not determine whether the lights
were on inside, and he could not see anybody through the blinds.  

However, the jury also heard evidence that it was
possible to see inside the apartment from the outside.  Hamilton testified that
she had blinds and hunter green curtains on her windows.  Hamilton testified it
was possible to see inside the apartment because “you can see through those
curtains” when the light is turned on in the living room.  E.P. Aguilera of the
Homicide Division, Crime Scene Unit testified that the blinds were opened
slightly, portions of the blinds were “fairly” open, and someone standing
outside could see directly into the apartment.  Finally, Lewis and Powell heard
appellant say “I got him,” indicating appellant could see into the apartment.  

Reconciliation of conflicts in the evidence is within
the exclusive province of the jury.  Margraves v. State, 34 S.W.3d 912,
919 (Tex. Crim. App. 2000), overruled on other grounds by Laster v. State,
275 S.W.3d 512 (Tex. Crim. App. 2009).  Therefore, the jury may choose to
believe some testimony and disbelieve other testimony.  Id.  Accordingly,
we conclude the evidence, when viewed in the light most favorable to verdict, is
legally sufficient to support the jury’s verdict.  See Aguirre v. State,
732 S.W.2d 320, 326 (Tex. Crim. App. 1987) (op. on reh’g) (holding that, when
appellant fired through the door, he intended to kill his former wife and that
felonious intent transferred over to the killing of his child).  We overrule
appellant’s first and second issues.  

Jury Charge

In his third issue, appellant contends the trial
court erred in instructing the jury on the doctrine of transferred intent.  Appellant
objected to the instruction on transferred intent as follows:

            [APPELLANT’S COUNSEL]:  . . . Secondly, the
defense would object to the charge of transferred intent.  There is no evidence
to support a jury charge or instruction of transferred intent. . . . 

*        *        *

            [THE STATE]:  . . . In terms of transferred
intent, Your Honor, I think it’s clear that his target and his intent was to
harm the individuals in Apartment 396 as opposed to 398.  So, transferred
intent would be a valid charge.  

*        *        *

            [APPELLANT’S COUNSEL]:  Nothing further, Judge.
 I think the evidence is clear there was no intention to injure or shoot Mr.
Lester Washington, that there was no evidence to indicate that they even knew
whether there was anybody inside the apartment.  The windows were closed, the
drapes were drawn, the blinds were shut.  And the evidence is clear that — even
from the people that were out there outside that were going to knock on the
door, they were not aware or had no idea whether or not there was anybody
inside the apartment.  And you cannot intend to shoot somebody in the apartment
if it’s pretty clear from the parties that they had no information that there
was anybody in the apartment.

            [THE STATE]:  Well, Judge, I think Mr. Dodier
is mistaken as to what exactly the evidence showed and what the witnesses
said.  What the witnesses said — and specifically the witnesses who were out
there with the defendant that day, they knew they were inside, they wanted to
knock on the door to lure them out so they could fight them, but opposed to
luring them out to fight them, the defendant decided that he would just shoot
the house up.

            So, there’s certainly enough for intent and
there’s certainly enough for transferred intent.

            [APPELLANT’S COUNSEL]:  We disagree, Judge. 
The evidence is the reason that he knocked on the door is because they didn’t
know if there was anybody in there.  Anyway, that’s our position.

            THE COURT:  Motion is denied.

            [APPELLANT’S COUNSEL]:  Thank you, Judge.

            THE COURT:  The charge stands.

In analyzing charge error, we first must determine
whether there is error in the charge.  Sakil v. State, 287 S.W.3d 23, 25
(Tex. Crim. App. 2009).  If there is error in the charge, and the defendant
timely objected to the error, reversal is required if the error is calculated
to injure the rights of defendant, meaning there must be some harm to the
defendant.  Id.; Almanza v. State, 686 S.W.2d 157, 171 (Tex.
Crim. App. 1985) (op. on reh’g).  The degree of harm is determined in light of
the entire jury charge, the state of the evidence, including the contested
issues and the weight of the probative evidence, the argument of counsel, and
any other relevant information revealed by the record of the trial as a whole. 
Almanza, 686 S.W.2d at 171.  

The jury charge must allow the jury to determine the
defendant’s guilt in light of the evidence and the law.  Hutch v. State,
922 S.W.2d 166, 170 (Tex. Crim. App. 1996).  Transferred intent occurs when a
defendant, with the required culpable mental state, intends to injure or harm a
specific person but injures or harms a different person or both.  Tex. Penal Code Ann. § 6.04(b).  

Appellant argues that the evidence does not show that
he shot at the window of apartment no. 398 with the intent to kill or cause
serious bodily injury to another person, but missed that person, and struck
Washington.  Appellant asserts the evidence showed that he did not know whether
anyone was inside the apartment when he shot at the window because the blinds
were closed and no one could see if anyone was in the apartment; therefore, he
argues that it was impossible for him have intentionally or knowingly shot at
any particular individual, miss that individual, and strike Washington.  

The jury heard evidence that appellant planned to
seek revenge on the “New Orleans boys”; Woody thought the intended victim was
staying in apartment no. 398; Jordan told Woody that he was wrong about where
the “New Orleans boys” were staying; someone could see into the apartment from
the outside; appellant was shooting at a person inside the apartment; and appellant
believed that he “got him.”  Therefore, there is evidence that appellant
intended to shoot one victim, but shot Washington.  Accordingly, the trial
court properly instructed the jury on transferred intent.  

Even if the trial court erred in charging the jury on
transferred intent, such error does not require reversal.  Because appellant
objected to the instruction on transferred intent, we consider whether such
error was calculated to injure the rights of appellant.  See Almanza,
686 S.W.2d at 171.  Pursuant to the charge, the jury could convict appellant
either based on direct intent or transferred intent, and the evidence was sufficient
to convict appellant of murder without an instruction on transferred intent.  Appellant
was planning to seek revenge on the “New Orleans boys,” had a gun, and fired
the gun through the window.  Appellant fled the scene with the group, but
returned for another round of shooting, and stated that “I got him,” indicating
that appellant could see into the apartment.  Appellant’s counsel did not refer
to transferred intent during closing argument; instead, he argued that there was
no intent to shoot Washington.  The prosecutor spoke about transferred intent
for about a page in the reporter’s record.  The trial court’s error, if any,
was not calculated to injure appellant’s rights.  We overrule appellant’s third
issue.

Jury Argument

In his fourth issue, appellant contends that the
trial court erred in overruling his objection to the State’s argument that the
jury must unanimously agree appellant is not guilty of murder before considering
the lesser-included offenses.  The following occurred during the first part of
the State’s closing argument:

            [THE STATE]:  . . . The important thing that
you need to think about here and the important thing that you need to remember
is before you even consider a lesser, before you even consider manslaughter,
before you even consider deadly conduct, all 12 of you have to agree that he is
not guilty of murder.  That is the most important thing on the lesser.  

            [DEFENSE COUNSEL]:  Your Honor, I object to
that.  That is not a correct statement of the instructions that you gave the
jury and of the law.

            [THE STATE]:  Your Honor, that is a correct
statement.

            THE COURT:  Overruled.

            [THE STATE]:  Let me clarify that.

            All 12 of you have to agree that he is not
guilty of murder.  Now, the charge may sound a little bit confusing.  Okay? 
What it basically says is if you have a reasonable doubt as to whether or not
he is guilty of murder, then you next consider manslaughter and so on.  Okay? 
Or if you can’t agree whether or not he is guilty of murder, then you next
consider manslaughter and so on to deadly conduct.

            What that is basically saying is:  Hold me to
my burden.  That’s all that’s saying.  It’s not saying that if 11 of you know
he’s guilty of murder and one of you possibly thinks that he’s guilty of
manslaughter, you find him guilty of manslaughter.  That’s not what it’s saying. 
It’s talking about your individual verdict.  Okay?  Each of you as
individuals.  It’s not saying that if six of you on the one hand know he’s
guilty of murder and six of you on the other hand possibly believe he is guilty
of manslaughter, you find him guilty of manslaughter.  That’s not what it’s
saying.

            [DEFENSE COUNSEL]:  Your Honor, again, I
object.  That’s not a proper statement of the evidence or of the instructions.

            THE COURT:  Overruled.

            [THE STATE]:  It’s talking about your
individual verdict and you holding me to my burden.  So, you as a juror, if for
some reason you possibly think that he’s not guilty of manslaughter — I’m sorry
— that he’s not guilty of murder, then you as an individual, you consider
manslaughter, but when you get together as a whole before you consider
manslaughter, all 12 of you as a whole agree that he not guilty of murder.

Appellant’s counsel gave his closing argument, which
responded to the prior complained-of argument:

            [APPELLANT’S COUNSEL]:  . . . And contrary to
what the prosecutor said, if some of you think he’s guilty of murder and some
of you say:  No, he’s not, he’s probably guilty of manslaughter, you have to
resolve the issue with manslaughter.  

The State then gave the rest of its closing argument,
correcting the earlier complained-of argument:

            [THE STATE]:  Now, I want to cover a couple of
other key concepts, a couple of other legal concepts.  I spoke to you sometime
[sic] ago about lessers, lesser-included offenses.  I want to clarify something
for you because I misspoke.  The law has changed.  You can consider a lesser at
any time.  Okay?  I misspoke.  I wanted to clarify that.  You can consider a
lesser at any time, but I submit to you that the lesser of manslaughter and the
lesser of deadly conduct won’t even be an issue because the defendant is guilty
of murder.  You can consider at any time.  Okay?  As a whole or individual, you
can consider it.  That was my mistake.  Again, the law has changed.  Those
aren’t going to be issues for you because the defendant is guilty of murder.  

Proper jury argument falls within one of the
following categories: (1) summation of the evidence, (2) reasonable deduction
from the evidence, (3) in response to argument of opposing counsel, and (4)
plea for law enforcement.  Davis v. State, 329 S.W.3d 798, 821 (Tex.
Crim. App. 2010).  Argument that misstates the law or is contrary to the jury
charge is improper.  Whiting v. State, 797 S.W.2d 45, 48 (Tex. Crim.
App. 1990); Burke v. State, 652 S.W.2d 788, 790 (Tex. Crim. App. 1983). 
A trial court puts its stamp of approval on the prosecutor’s misstatement of
the law when it overrules the defense’s objection.  Burke, 652 S.W.2d at
790; Lee v. State, 971 S.W.2d 130, 131 (Tex. App.—Houston [14th Dist.]
1998, pet. ref’d).

The jury is entitled to consider the charge as a
whole and is not required to unanimously agree that a defendant is not guilty
of the greater offense before considering the lesser-included offense.  Barrios
v. State, 283 S.W.3d 348, 349–50 (Tex. Crim. App. 2009).  Therefore, the
prosecutor’s statement that all members of the jury must agree that appellant
is not guilty of murder before they could consider the lesser-included offenses
was a misstatement of the law.  

Improper-argument error is non-constitutional error. 
Brown v. State, 270 S.W.3d 564, 572 (Tex. Crim. App. 2008). 
Non-constitutional error that does not affect substantial rights must be
disregarded.  Id.  To determine whether appellant’s substantial rights
were affected by improper argument, we balance the following factors: (1) the
severity of the misconduct (the magnitude of the prejudicial effect of the
prosecutor’s comment), (2) any curative measures taken (the effect of any
cautionary instruction by the trial court), and (3) the certainty of conviction
absent the misconduct (the strength of the evidence supporting the conviction). 
Mosely v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998).  

We first consider the severity of misconduct.  “[I]n
evaluating the severity of the misconduct, we must assess ‘whether [the] jury
argument is extreme or manifestly improper [by] look[ing] at the entire record
of final argument to determine if there was a willful and calculated effort on
the part of the State to deprive appellant of a fair and impartial trial.’”  Brown,
270 S.W.3d at 573 (quoting Cantu v. State, 939 S.W.2d 627, 633 (Tex.
Crim. App. 1997)). When viewing the State’s closing argument in whole, we
cannot conclude that there was a willful and calculated effort on the part of
the State to deprive appellant of a fair and impartial trial.  

Second, we consider any curative measures, including
those taken by the prosecutor.  See Hawkins v. State, 135 S.W.3d 72, 84
(Tex. Crim. App. 2004) (“Although a prosecutor’s self-corrective action might
not carry the same weight as a trial court’s instruction to disregard, it is
nevertheless a relevant consideration in determining harm and can, in the
appropriate circumstances, render an improper comment harmless.”).  Although
the trial court did not provide a curative measure, the prosecutor corrected
her prior misstatement of the law.  In the second part of her argument, the
prosecutor subsequently admitted that her prior statement regarding lesser
included offenses was incorrect, explained that the law had changed, and specifically
stated three times that the jury could consider a lesser included offense at
any time.  Moreover, appellant’s counsel informed the jury of the correct
status of the law.  Finally, the court’s charge properly instructed the jury on
the status of the law.  See id. (explaining the court of appeals erred
in failing to consider that the jury charge properly instructed the jury on the
law).  

Third, we consider the certainty of appellant’s
conviction for murder.  As discussed above, appellant intended to seek revenge
on the “New Orleans boys.”  Appellant was the only one in the group in
possession of a gun just prior to the shooting.  Witnesses testified that
appellant was shooting at the window.  Appellant had a .22 caliber Ruger, and
two bullets of the .22 caliber family were recovered from Washington’s body.  Appellant
was heard to say “I got him” as he was running through the parking lot.  The
evidence supporting appellant’s murder conviction is strong.  Therefore, the
prosecutor’s error in initially misstating law was harmless.  We overrule
appellant’s fourth issue.  

 

Having overruled all of appellant’s issues, we affirm
the judgment of the trial court.  

 

                                                                                    

                                                                        /s/        Sharon
McCally

                                                                                    Justice

 

 

 

 

Panel consists of Justices Anderson,
Seymore, and McCally.

Do
Not Publish — Tex. R. App. P. 47.2(b).